INDUSTRIAL RISK INSURERS, et al., Plaintiffs,

v.

CREOLE PRODUCTION SERVICES, INC., et al., Defendants.

HARBOR INSURANCE CO., Third-Party Plaintiff/Appellant.

v.

FLUOR CORPORATION, a Delaware Corporation; Fluor Alaska, Inc.; and Fluor Engineers and Constructors, Inc., its wholly owned subsidiaries, Third-Party Defendants/Appellees.

No. 83–4011.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1984.

Decided Oct. 30, 1984.

Thomas S. Felker, James B. McCabe, Foulds, Felker, Burns & Johnson, Seattle, Wash., for Industrial Risk Insurer.

John A. Treptow, Atkinson, Conway, Bell & Gagnon, Anchorage, Alaska, for Harbor Ins.

Mark A. Sanberg, Henry J. Camarot, Camarot, Sandberg & Hunter, Anchorage, Alaska, for Flouor.

Before BROWNING and CANBY, Circuit Judges, and LYNCH,* District Judge.

* The Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

LYNCH, District Judge:

This matter is before the court on the appeal of the Harbor Insurance Company ("Harbor") from the district court's granting of summary judgment for the third-party defendants. The district court ruled that Harbor could not recover against the third-party defendants in implied indemnity. We agree, and we affirm the judgment for the reasons stated below. The opinion of the district court can be found at 568 F.Supp. 1323 (D.Alaska 1983).

FACTS

The Alyeska Pipeline Service Company ("Alyeska") is the agent for the owners of the Trans-Alaska Pipeline System ("TAPS"). Industrial Risk Insurers is an insurer of the owners of TAPS; all TAPS insurers will be referred to collectively as "IRI." Creole Production Services, Inc. ("Creole") is an oil pipeline consultant that contracted with Alyeska to be in charge of the start-up of Alyeska's pump stations. The Harbor Insurance Company is Creole's insurer. The Fluor Corporation is a construction and engineering firm that contracted with Alyeska to design (and, for purposes of the motion for summary judgment, construct and test) the pump stations and terminal facilities; Fluor and its wholly owned subsidiaries will be referred to collectively as "Fluor."

On July 8, 1977, only six days after the commencement of pumping, an explosion and fire destroyed a pump station on the pipeline. One life was lost. Thereafter, IRI paid Alyeska, its insured, over $5,000,-000. IRI then sued Creole in federal court under the court's diversity jurisdiction; IRI did not sue Fluor. IRI's initial complaint was based both on negligence and on an indemnity provision in Creole's contract with Alyeska, but IRI later filed an amended complaint that included only the contract claim. Creole impleaded Fluor. Creole then settled with IRI (for an amount

not apparent) and assigned its rights against Fluor to its insurer Harbor.

The third-party complaint alleges that Fluor is liable to indemnify Creole for either the entire amount of Creole's liability or pro rata on the basis of proportionate fault. On a motion for summary judgment, the district court found against Harbor as to each of five broad theories of liability that the court found were suggested by the facts alleged in the third-party complaint. These theories included contribution, breach of warranty, partial indemnity, indemnity, and liability for economic loss due to Fluor's negligence. Only the indemnity claim is before the court on appeal.

DISCUSSION

Harbor's claim for implied indemnity sounds in quasi-contract. Essentially, Harbor asserts that the court should imply a promise by Fluor to indemnify Creole/Harbor because Fluor would otherwise be unjustly enriched. Fluor has raised four arguments, any one of which, if correct, would allow it to prevail. Although all of these arguments were made in the district court, that court reached only the argument that Creole/Harbor has no right to indemnity because it was either a concurrent tortfeasor or a volunteer.

We agree with the district court's holding that persons who volunteer payments are not entitled to indemnification under the general law of indemnity. *See* Restatement of Restitution § 76 (1937); *Fulton Ins. Co. v. White Motor Corp.*, 261 Or. 206, 208–10, 493 P.2d 138, 140–41 (1972). We also agree with the district court's conclusion that Alaska law prevents concurrent tortfeasors from recovering anything in implied indemnity. *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619 (Alaska 1983). Notwithstanding our agreement with these rulings of the district court, we choose to affirm the judgment on another ground.[1] We hold that

---

1. It is well settled that the judgment of the district court may be affirmed on grounds other than those relied on by the district court. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 71,

94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974); *Riley Co. v. Commissioner*, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983).

Harbor cannot recover from Fluor in implied indemnity because it was either a concurrent tortfeasor or a mere insurer or guarantor. This argument was presented to the district court, and we prefer to rest our affirmance on this ground because it does not involve the difficult issues of contract interpretation comprehended by the argument accepted by the district court.

The court is aware of no Alaska cases on the question of whether an insurer or guarantor may recover in implied indemnity. We believe, however, that, if given the opportunity, the Alaska Supreme Court would follow the general rule that implied indemnity is not available to one "who guarantees or insures another against a payment for which the guarantor or insurer is not himself liable since the duty of indemnity and the right to subrogation of such persons are wholly dependent upon the contract or agreement with the other." Restatement of Restitution § 76 comment b (1937).

A simple illustration of this rule is provided by *Great American Ins. Co. v. United States*, 575 F.2d 1031 (2d Cir.1978), in which an insurance company sought implied indemnity from the United States for a payment that the company made to an assured building owner. The owner's property was allegedly damaged by the negligence of U.S. marshals. Although the insurer was subrogated to the landlord's straight negligence claim, this cause of action accrued when the damage occurred and was barred by the statute of limitations; thus, it was necessary for the insurer to rely on an implied indemnity theory, which cause of action would have accrued upon payment to the assured. The court held that no claim for implied indemnity existed and that the insurer's only action was the subrogated claim for negligence, which was of course barred. *Great American* has recently been followed by the Seventh Circuit and by the Supreme Court of Rhode Island. *Rock Island Bank v.*

*Aetna Casualty & Surety Co.*, 692 F.2d 1100 (7th Cir.1982); *Silva v. Home Indemnity Co.*, 416 A.2d 664 (R.I.1980).

■ The *Great American* result squares with the authorities, and it is a just result. The entity against whom indemnity is sought should not be stripped of its defenses to the subrogated claim by the unilateral act of the insurer in paying the injured party. In *Great American*, that defense was the statute of limitations; in this case it is Alyeska's comparative negligence, which Fluor could assert against any subrogated claim acquired by Creole when it settled with IRI, but which Fluor cannot assert in this action by Creole/Harbor for implied indemnity.[2] Moreover, since the insurer's obligation to pay is due solely to its contract, it presumably received consideration for agreeing to bear the risk; allowing indemnity gives the insurer a windfall. Implied indemnity is not intended for such persons. As a general rule, "[t]he right to indemnity inures to a person who, without active fault on his part, is compelled by reason of legal obligation or relationship to pay damages which have been caused by the acts of another." *Pearson Ford Co. v. Ford Motor Co.*, 273 Cal. App.2d 269, 272, 78 Cal.Rptr. 279, 282 (1969).

The question then becomes whether Creole was merely one who guaranteed or insured another against a payment for which it was not itself liable. The claim that Creole settled with IRI was brought under Creole's contractual undertaking to pay Alyeska and the owners of TAPS for certain losses. That undertaking reads as follows:

> CONSULTANT [Creole] shall defend, indemnify and save ALYESKA and OWNERS harmless from all liability, cost and expenses for loss of or damage to property or for injury to or death of persons, including but not limited to, the property and employees of CONSULTANT, ALYESKA, AND OWNERS when aris-

---

**2.** We take no position on whether Fluor's hypothetical comparative negligence defense would have any merit. Harbor did not assert in the court below any subrogated claims acquired from IRI.

ing or resulting from CONSULTANT'S performance of the SERVICES described herein regardless of any negligence on the part of ALYESKA or OWNERS, or third parties except such loss, damage, injury or death which may result from the sole negligence or willful misconduct of ALYESKA, OWNERS, or their agents or servants, or any independent contractors who are directly responsible to ALYESKA or OWNERS, or solely from the joint or concurrent negligence of some third party or parties and OWNERS and/or ALYESKA.

In agreeing to pay for losses "arising or resulting from" Creole's performance of services regardless of the negligence of Alyeska, or the owners, or third parties, Creole agreed to contractual liability going well beyond any tort liability that could be imposed upon it.[3] Harbor attempts to distinguish *Great American* by arguing that "[u]nlike an insurer or guarantor, Creole's indemnity agreement *was* bottomed on Creole's liability—Creole was liable to pay only if the loss sustained arose or resulted from Creole's performance of services under the contract." Appellant's Reply Brief at 12. This argument has two fatal flaws.

■ First, Creole *could not* be held liable in tort for losses that simply *arose* or *resulted from* its performance of services. The "arising or resulting from" standard is essentially the standard of strict liability. Alaska does not impose strict liability upon mere sellers of services. *Swenson Trucking and Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1116–17 (Alaska 1980); *Pepsi-Cola Bottling Co. of Anchorage v. Superior Burner Service*,

427 P.2d 833, 839 & n. 21 (Alaska 1967). In addressing the volunteer/concurrent tortfeasor rationale used by the district court, the parties have argued over whether Fluor, as a *construction company* and not a mere provider of *engineering services*, could be held strictly liable under Alaska law. The answer to this question, whatever that answer might be, does not affect our conclusion that Creole could not be held strictly liable. Creole was a mere provider of engineering services. Creole's contractual duties are listed in the district court's opinion at 568 F.Supp. 1323, 1325 n. 1.

The second flaw in Harbor's argument is this: to the extent that Creole's indemnity agreement with Alyeska *was* bottomed on Creole's liability in tort, Creole would be a tortfeasor and would be unable to get indemnification under *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619 (Alaska 1983). It is irrelevant whether the *Vertecs* rule applies where the tort liability in question is strict liability because Creole could not be held strictly liable.

Thus, Creole's contractual obligation to pay applies in only two situations. First, Creole could have a contractual obligation to pay for losses for which it would, in any event, be liable in tort; *Vertecs* would preclude indemnification of Creole in such a case. Second, Creole could have a contractual obligation to pay for losses for which it would not otherwise be liable; *Great American* would preclude indemnification of Creole in this case. Creole was either an insurer or a tortfeasor; neither is entitled to implied indemnity.[4]

---

**3.** It is true that the contract exempts Creole from liability for losses "which may result from the sole negligence or willful misconduct of ALYESKA, OWNERS, or their agents or servants, or any independent contractors who are directly responsible to ALYESKA or OWNERS, or solely from the joint or concurrent negligence of some third party or parties and OWNERS and/or ALYESKA." However, the central point remains that Creole has agreed to pay for some losses for which it would not otherwise be liable. The exclusion for the sole negligence or willful misconduct of Alyeska or others is not

different from an exclusion in an ordinary contract of insurance. In any event, Harbor does not and cannot contend that the exclusion was applicable in this case.

**4.** It is theoretically possible for Creole to have been contractually liable to pay for losses for which it was otherwise liable under some *non-tort* theory such as a no-fault safety statute. In such a case, Creole might be neither an insurer nor a tortfeasor; however, Harbor has suggested no such basis for liability.

## CONCLUSION

For the foregoing reasons, we find that the district court properly held that Harbor was not entitled to recover anything in implied indemnity. Accordingly, the judgment is AFFIRMED.