**RAILWAY LABOR EXECUTIVES ASSOCIATION and J. Jay Stull, Plaintiffs-Appellants,**

v.

**Elizabeth DOLE, Secretary of Transportation, and Robert W. Blanchette, Administrator, Federal Railroad Administration, Defendants-Appellees.**

No. 83–4306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 6, 1984.

Decided May 17, 1985.

---

Lawrence M. Mann, Alper, Mann & Reiser, Washington, D.C., for plaintiffs-appellants.

Kenneth Gradia, Trial Atty., Edward R. Cohen, Robert S. Greenspan, Washington, D.C., for defendants-appellees.

Before GOODWIN and SCHROEDER, Circuit Judges, and JAMESON,* District Judge.

GOODWIN, Circuit Judge.

A railroad labor organization and an individual railroad employee sued the Secretary of the Department of Transportation and the Administrator of the Federal Railroad Administration, a Department of Transportation division, for a declaratory judgment and injunction to require these agencies to enforce railroad statutes mandating assessment of penalties against railroads for safety violations. The district court held that the plaintiffs had no standing to sue as private attorneys general and dismissed the action. We affirm.

Congress has enacted railroad safety laws, the enforcement provisions of which create civil penalties, together with mandatory language concerning their enforcement. *See, e.g.,* 49 U.S.C. § 26 and 45 U.S.C. The Secretary of Transportation, through the Federal Railroad Administration, is charged with enforcement responsibilities. 49 U.S.C. § 26(d), (h). These responsibilities include inspections of railroad equipment and work sites and recommendations for civil penalties. The statutes require a penalty each time an inspector finds a violation. The Federal Railroad Administration chief counsel's office examines penalty recommendations and advises the Secretary whether to assess penalties against the railroads.

In December 1981, the Secretary of Transportation submitted to Congress a "systems safety plan" for railroads. The plan stressed cooperation with railroads in finding and remedying safety problems. The Federal Railroad Administration says

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

it has followed the plan since it was promulgated.

Plaintiffs contend that since the plan went into effect the number of injuries to railroad employees has risen dramatically. This assertion relies almost entirely on anecdotal affidavits of plaintiffs' attorneys who claim to have more railroad injury cases in their offices than they formerly had. Standing alone, the alleged increase in accidents is an essentially *post hoc ergo propter hoc* argument. The causal nexus between the enforcement plan and the number of injuries is unclear and presumably would occupy a large part of any trial that might be had.

The doctrine of standing requires plaintiffs to demonstrate "a personal stake" in a concrete controversy. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *See McMichael v. County of Napa,* 709 F.2d 1268, 1269 (1983). The standing analysis takes into account "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

Recognized constitutional limitations on standing involve three separate but interrelated elements: First, the necessity for a "distinct and palpable" injury to the plaintiff, *Warth* at 501, 95 S.Ct. at 2206, either "threatened or actual," *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); second, a fairly traceable causal connection between the injury and the defendant's conduct, *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); and third, a "substantial likelihood" that plaintiff's request will redress or prevent the injury. *Id.* at 75 n. 20, 98 S.Ct. at 2631 n. 20; *McMichael,* 709 F.2d at 1270; *Gonzales v. Gorsuch,* 688 F.2d 1263, 1267 (9th Cir.1982).

Plaintiffs encounter difficulty with all three of the standing requirements but completely fail to satisfy the element of redressability. Redressability is closely related to the requirement of a causal link between the threatened injury and the conduct to be modified by the relief claimed. *Gonzales v. Gorsuch,* 688 F.2d 1263, 1267 (9th Cir.1982). Redressability, however, requires the court to examine whether "the court has the power to right or to prevent the claimed injury." *Id.* Plaintiffs have failed this prong of the standing test because even with an injunction sending more inspectors to monitor enforcement of the railroad safety statutes, injuries will occur in rail yards. Employees violate safety rules and equipment breaks down. The number of inspectors necessary to prevent a given number of accidents is unknown. The deployment of inspectors is essentially an executive branch matter.

In *Gonzales v. Gorsuch,* the court said it could not redress the injury when a losing competitor challenged a grant by the Environmental Protection Agency and the plaintiff alleged that the grant had been made improperly. The court stated that where the causal link between an injury alleged and the relief sought is remote, a court cannot right or prevent the claimed injury. "[I]f the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing." 688 F.2d at 1267 (*citing Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). *See also Boating Industry Associations v. Marshall,* 601 F.2d 1376 (9th Cir.1979).

The question of redressability in this case involves the court in fashioning an enforcement manual for an executive branch agency that was presumably commissioned by Congress to devise its own enforcement strategy. Even if plaintiffs are correct that one enforcement plan results in a greater number of railroad worker injuries than a different enforcement plan would yield, and if subjectively better enforcement would decrease the number of injuries, it remains virtually impossible for a district court to write the qualitative standards for, and to supervise the enforce-

ment efforts of, the agency charged with safety responsibility.

In *Linda R.S.*, the Supreme Court denied the standing of a mother who sued for an injunction to force a prosecutor to arrest the father for failure to pay child support. The Court held that speculation whether jailing the child's father would cause the father to make support payments did not equal redressability. To like effect, it is also speculative that one number of Federal Railroad Administration officials making spot checks in railroad yards will prevent a greater number of injuries to workmen than would a different number of inspectors.

The trial court properly perceived that this litigation is an attempt by an interest group to win in the courts a political argument that it appears to have lost in its dealings with the executive branch. While these cases have a superficial appeal as a legitimate employment of checks and balances, this particular effort to supplant current executive branch management with judicial management would stretch the concept of standing beyond any demonstrable need and make the federal courts a grievance committee to review budget cuts government-wide.

Finally, the appeal raises a point not addressed by the district court, e.g., whether an action will lie to compel the Secretary to assess a penalty for each detected violation rather than to impose penalties only upon repeated violations. The appellant relies inter alia upon 45 U.S.C. §§ 6, 12, 34, and 438; and 49 U.S.C. §§ 26(h).

■ Again, the appellant is confronted with a standing problem. Ordinarily, when Congress designates the United States Attorney of the district in which the violation is detected as the officer to prosecute the penalty provision, that designation is exclusive, and private attorneys have no standing to bring private actions to force the prosecutor to act.

We need not be detained by standing requirements, however, because there is a more fundamental reason for affirming the trial court. The Supreme Court recently reviewed the right of private parties to sue to compel an agency (The Food and Drug Administration) to enforce statutory and regulatory duties in *Heckler v. Chaney, et al.,* —— U.S. ——, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). *Heckler v. Chaney* did not deal with standing, as such, but rather denied reviewability of an agency decision not to prosecute on the traditional basis of a failure to state a claim under Fed.R. Civ.P. 12(b)(6). The court held that the presumption against reviewability of agency decisions not to prosecute was controlling in the absence of some indication that Congress intended that there be judicial review. We quote:

"The reasons for this general unsuitability are many. First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's over-all policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Similar concerns animate the principles of administrative law that courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543 [98 S.Ct. 1197, 1211, 55 L.Ed.2d 460] (1978); *Train v. Natural Resources Defense Council,* 421 U.S. 60, 87 [95 S.Ct. 1470, 1485, 43 L.Ed.2d 731] (1975)."

"In addition to these administrative concerns, we note that when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called to protect. Similarly, when an agency *does* act to enforce, that action itself provides a focus for judicial power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers. See, *e.g.,* *FTC v. Klesner,* 280 U.S. 19 [50 S.Ct. 1, 74 L.Ed. 138] (1929). Finally, we recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.' U.S. Const., Art. II, § 3."

We find nothing in the railroad safety legislation to indicate that Congress intended to make prosecutorial discretion subject to judicial review. There is abundant evidence that Congress was aware of the efficacy of jury verdicts under the F.E.L.A. to stimulate safety through private litigation. Congress obviously knew how to bring private litigation to bear upon railroad safety when it saw fit to do so. It has not seen fit to utilize the private sector to tell the agency how to collect penalties.

The judgment is affirmed.

SCHROEDER, Circuit Judge, concurring and dissenting.

I agree that a complaint seeking to direct the agency to exercise its prosecutorial discretion one way rather than another should be dismissed because it does not state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12; *Heckler v. Chaney,* — U.S. —, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). But agencies may not violate congressional directives with impunity. *See Chaney,* 105 S.Ct. at 1656–57 & n. 4;

*Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Kunaknana v. Clark,* 742 F.2d 1145, 1148 (9th Cir.1984); *Carpet, Linoleum and Resilient Tile Layers v. Brown,* 656 F.2d 564, 568–69 (10th Cir.1981); *District 2, Marine Engineers Beneficial Association v. Adams,* 447 F.Supp. 72, 74–75 (N.D.Ohio 1977); *see also Adams v. Richardson,* 480 F.2d 1159 (D.C.Cir.1973) (en banc).

The plaintiffs assert that the Secretary, by directing inspectors not to assess penalties when they find statutory violations, is violating the express terms of the statutes. *See* 45 U.S.C. §§ 6, 13, 34, 438; 49 U.S.C. §§ 26(h), 1809. In my opinion, the majority has dealt too hastily with this claim which the district court also failed to consider. As the Supreme Court recognized in *Chaney,* when an agency has " 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities," it has ceased acting within an area committed to its discretion. *Chaney,* 105 S.Ct. at 1657 n. 4 (quoting *Adams v. Richardson,* 480 F.2d at 1162). I would remand for consideration of the plaintiffs' claim that the Secretary's policy violates her statutory duties.