**FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



DARLENE YAZZIE; CAROLINE
BEGAY; LESLIE BEGAY; IRENE ROY;
DONNA WILLIAMS; ALFRED MCROYE,

Plaintiffs-Appellants,

v.

KATIE HOBBS, in her official capacity as
Secretary of State for the State of Arizona,

Defendant-Appellee.

No.   20-16890

D.C. No. 3:20-cv-08222-GMS

OPINION

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Argued and Submitted October 13, 2020
San Francisco, California

Before:  M. Margaret McKeown and Jacqueline H. Nguyen, Circuit Judges, and
Robert H. Whaley,* District Judge.

Per Curiam

This appeal in a pre-election challenge to Arizona's mail ballot deadline

comes to us just three weeks before this year's general election.  Early voting in

---

*        The Honorable Robert H. Whaley, United States District Judge for the
Eastern District of Washington, sitting by designation.

Arizona began about a week ago on October 7, 2020. On the same date, Arizona started mailing ballots to voters on the permanent early voting list. Others who wish to vote by mail must request a mail ballot by October 23, 2020.[1] Arizona law provides that mail ballots "must be received by the county recorder or other officer in charge of elections or deposited at any polling place in the county no later than 7:00 p.m. on election day," which this year is November 3, 2020 ("Receipt Deadline"). Ariz. Rev. Stat. § 16-548(A). This Receipt Deadline is at the heart of this appeal.

In late August 2020, six members of the Navajo Nation who reside on the reservation in Apache County, Arizona—Darlene Yazzie, Caroline Begay, Leslie Begay, Irene Roy, Donna Williams, and Alfred McRoye (collectively, "Yazzie")—initiated an action challenging Arizona's Receipt Deadline pursuant to Section 2 of the Voting Rights Act of 1965 ("VRA"), *see* 52 U.S.C. § 10301, the Equal Protection Clause of the United States Constitution, and the Arizona Constitution's election clause.[2]

---

[1] Pursuant to an order from our court, Arizona has changed the deadline for voter registration for this year's general election to 11:59 p.m. on October 15, 2020. *See Mi Familia Vota v. Hobbs*, No. 20-16932, Slip Op. at 13 (9th Cir. Oct. 13, 2020). This revised deadline to register to vote does not change the deadline to request a ballot by mail, which remains at 5:00 p.m. on October 23, 2020.

[2] The federal and state constitutional claims are not addressed in Yazzie's opening brief and are thus waived. *See Ind. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief.").

According to the Complaint, Navajo Nation reservation residents face myriad challenges to voting by mail. Many on-reservation members do not have home mail service; to receive or send mail, they must travel to a post office. This trip is often long and requires traversing rough terrain and stretches of unpaved roads. Added to this challenge are the socioeconomic factors, educational disadvantages, and language barriers that make both the travel to the post office—which requires access to a car—and the completion of mail ballots difficult. Even after these obstacles are overcome and the ballots are mailed, Yazzie claims that these mail ballots take disproportionately longer to reach the county recorder's office because of the slower mail service on the reservation.

In early September 2020, Yazzie moved for a mandatory preliminary injunction that would require Arizona to count mail ballots from on-reservation Navajo Nation tribal members that are postmarked—rather than received—by election day, November 3, 2020, and received on or before November 13, 2020 ("Postmark Deadline"). After an evidentiary hearing, the district court denied, in late September 2020, the motion for preliminary injunction based on its finding that Yazzie did not demonstrate a likelihood of success on the merits or raise serious questions going to the merits of Yazzie's VRA claim. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Disney Enters. Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

We do not address the district court's analysis of the VRA claim because we conclude that Yazzie and the other plaintiffs lack standing. *See Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). Because standing is a threshold issue, we consider whether Yazzie has "demonstrate[d] standing . . . for [the] form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted). At this preliminary injunction stage, Yazzie "must make a clear showing of each element of standing," proving (1) an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) "a causal connection between the injury and the conduct complained of"; and that (3) "the injury will likely be redressed by a favorable decision." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013); *see Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Winter*, 555 U.S. at 22) (a "clear showing" of injury-in-fact is required at the preliminary injunction stage).

Not only does Yazzie fail to make a clear showing of a concrete and particularized injury, noticeably absent in the record is any particularized allegation with respect to any of the six individual plaintiffs. Importantly, this case is not a putative class action filed on behalf of the Navajo Nation members who reside on the reservation; it is brought in the name of six individuals. The Navajo

4

Nation has in fact distanced itself from the suit. It sent Yazzie's counsel a letter emphasizing that the Nation is not a party to the lawsuit, such that Yazzie had misstated that "[t]he Navajo Nation files lawsuit over mail-in ballot counting." Hence, for this court to have jurisdiction over this preliminary injunction appeal, Yazzie must establish injury-in-fact for at least one of the individual plaintiffs in this lawsuit.[3] Yazzie fails to do so.

The Complaint alleges a general "desire to participate in the electoral and political processes of Arizona on an equal basis with non-Indian voters." But this kind of general intent to decide, "at some point," to cast a ballot in a particular way that may disenfranchise them "epitomizes speculative injury." *Townley*, 722 F.3d at 1133. A plaintiff bringing a claim under Section 2 of the VRA must allege a particular and concrete injury; it is not enough, as Yazzie does here, to simply "speculate" that the Receipt Deadline "would be . . . a difficult burden on them." *See Farrakhan v. Washington*, 338 F.3d 1009, 1022 (9th Cir. 2003) (internal quotation marks omitted).

What is missing for Yazzie is any allegation or showing as to, at a bare minimum, whether any of the plaintiffs intend to vote in this general election, and

---

[3] Because Yazzie is seeking injunctive relief, "this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009). Here, none of the plaintiffs have shown standing.

if so, whether they intend to vote by mail. Nor does Yazzie allege whether the plaintiffs are on the rolls for automatic receipt of an early ballot or whether *they* face the challenges in terms of location or other claimed disabling factors, such as "the COVID-19 pandemic and the United States Postal Service . . . reorganizational issues" with respect to the Receipt Deadline. While the Complaint is replete with general allegations concerning the various hardships the Navajo Nation members who live on the reservation generally face with respect to mail voting, nothing in the record says whether Yazzie and her fellow plaintiffs have experienced "lack of home mail delivery, the need for language translation, lack of access to public transportation and lack of access to any vehicle" such that the Receipt Deadline will harm *their* ability to vote in *this* election. *See Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007) (no injury in fact for VRA claim where the allegation was "an undifferentiated harm suffered in common by all citizens of the county"). The failure to plead—much less make a clear showing of—concrete and particularized injury is enough to doom Yazzie's standing.

But even if we could overlook these pleading gaps and deem the allegations concerning the desire to participate in elections equally as an injury sufficient to meet the first prong of constitutional standing, also missing is a clear showing that the alleged injury is redressable by a favorable decision by this court. If we are

"unable to grant the relief that relates to the harm, the plaintiff lacks standing." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). This redressability requirement presents an insuperable standing hurdle for Yazzie.

To demonstrate redressability, Yazzie must show "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and citation omitted). But the record reflects, without countervailing evidence from Yazzie, that the requested relief—a modified voting schedule solely for on-reservation Navajo Nation members—cannot redress the claimed injury, at least for this election. Crucially, the Postmark Deadline cannot be implemented because the mail ballots received and logged by the county recorder do not indicate—and Yazzie provides no way to otherwise discern—whether those ballots were cast by on-reservation Navajo Nation members. The infeasibility of a Postmark Deadline for only certain tribal members gets at "the very essence of the redressability requirement" because "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Yazzie claims that three Arizona counties, Apache, Navajo, and Coconino, are implicated because these counties comprise the Navajo Nation reservation in Arizona. Even assuming that it is possible to tell whether a given mail ballot

7

originated from the reservation and not somewhere else in the precinct, the record does not indicate how to tell whether the ballot was cast by an enrolled member of the Navajo Nation. Not everyone who resides on the reservation is a Navajo; non-minority voters also reside on the reservation. And not every Navajo living on the reservation is an enrolled member of the Navajo Nation. Yazzie does not explain how the county recorders can trace the mail ballots to on-reservation Navajo Nation members.

According to the testimony of Sambo Dul, Arizona's Elections Director, the county recorders cannot "effectively differentiate between the ballots from Navajo voters who live on the reservation versus everyone else's ballots." A voter's ethnic identity or tribal membership is not on the face of the ballot or readily available from the voter's registration record.

Another practical hurdle undermining redressability is that the U.S. Postal Service has "not habitually postmark[ed] mail-in ballots," according to Patty Hansen, the Coconino County Recorder. Even Yazzie's experts candidly observed that "mail is not always date-stamped with the day and time that it is actually posted." We are aware that the Southern District of New York issued a preliminary injunction with respect to the U.S. Postal Service and ballots. *Jones v. U.S. Postal Serv.*, 2020 WL 5627002, at *28–29 (S.D.N.Y. Sept. 21, 2020). As an adjunct to that injunction, the court approved the proposed Guidance Memorandum

8

in which the Postal Service committed to having "[a]ll identifiable ballots returned by voters . . . be 'cancelled' or 'postmarked,' regardless of the method of payment of postage used . . . to ensure all collected ballots are processed timely."[4]  But even if the mandatory injunction will prompt the Postal Service to attempt to postmark all mail ballots for this election, Yazzie's relief will still depend on the act of a third party who is not controlled or bound by a favorable ruling of this court.  *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("There is no standing if, following a favorable decision, whether the injury would be redressed would still depend on the unfettered choices made by independent actors not before the courts." (internal quotation marks and citation omitted)).  The U.S. Postal Service is not a party to this suit.

Hence, imposing one deadline for general voters and another for members of Navajo Nation's on-reservation voters, who cannot be readily identified, imposes not only a "significant administrative burden" on Arizona's ability to carry out a general election in the midst of the COVID-19 pandemic, but also a redressability hurdle that cannot be cleared with a favorable court ruling.  *See Ry. Labor Execs. Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985) ("Redressability . . . requires the court to examine whether the court has the power to right or to prevent the

---

[4] Exhibit A to Letter addressed to Judge Victor Marrero at 1, *Jones v. U.S. Postal Serv.*, No. 20 Civ. 6516 (S.D.N.Y. Oct. 9, 2020), ECF No. 83-1; *Id.* (order approving the proposed Guidance Memorandum), ECF No. 84.

claimed injury." (internal quotation marks and citation omitted)).

While we are sympathetic to the claimed challenges that on-reservation Navajo Nation members face in voting by mail, we lack jurisdiction because Yazzie and the other individual plaintiffs do not satisfy "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Though a distinct doctrine, *Purcell* concerns also resonate through the standing infirmities in this case. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (noting that court orders close to the election "can themselves result in voter confusion and consequent incentive to remain away from the polls"). Although we do not discourage challenges to voting laws that may be discriminatory or otherwise invalid, whenever they may arise, we are mindful that the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). The Arizona statute setting election day as the deadline for receipt of ballots has been in effect since 1997. Ariz. Laws 1997, 2d Spec. Sess. Ch. 5 (S.B. 1003). Dismissal of this last-minute challenge to a decades-old rule should be fair notice to plaintiffs who want to tackle the deadline in the future. Accordingly, we affirm the district court's

denial of Yazzie's request for a preliminary injunction.[5]

**AFFIRMED.**

---

[5] Even though the district court has not ruled on standing, "we must consider it because it governs our jurisdiction as well." *City of S. Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980). Because "the judgment of the district court may be affirmed on grounds other than those relied on by the district court," we affirm the district court based on standing. *Indus. Risk Insurers v. Creole Prod. Servs., Inc.*, 746 F.2d 526, 527 n.1 (9th Cir. 1984).