785 F.2d 1038
 251 U.S.App.D.C. 350, 16 Envtl. L. Rep. 20,788
 Joette LORION, d/b/a Center For Nuclear Responsibility, Petitioner,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION and United
States of America, Respondents,
Florida Power & Light Company, Intervenor.
 No. 82-1132.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 16, 1985.
Decided March 18, 1986.
 
 Martin H. Hodder, Miami, Fla., with whom Terence J. Anderson, Coral Gables, Fla., of counsel, was on brief, for petitioner.
 Richard P. Levi, with whom F. Henry Habicht, II, Asst. Atty. Gen., Herzel H.E. Plaine, Gen. Counsel, William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., Dirk D. Snel, and John A. Bryson, Washington, D.C., were on brief, for respondents.
 Harold F. Reis, with whom Holly N. Lindeman, Washington, D.C., and Norman A. Coll, Miami, Fla., of counsel, were on brief, for intervenor.
 Before MIKVA, Circuit Judge, and MACKINNON and SWYGERT,* Senior Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 For more than four years, Joette Lorion has been trying to force the Nuclear Regulatory Commission ("NRC" or "the Commission") to take action against a nuclear power plant near Miami, Florida. She fears that the Turkey Point Unit #4 nuclear reactor, which is owned and operated by Florida Power & Light Co. ("FPL"), contains unsafe equipment, and that the danger of a nuclear accident is steadily increasing. Her crusade began with a letter to the Commission; since then it has grown to include a Supreme Court decision, and now a second trip to this court.
 
 
 2
 Lorion raises a variety of legal issues, some of them quite complex. None of her contentions, however, can overcome the wide latitude that the NRC has in framing its criteria for hearings and its enforcement agenda. We hold that the NRC acted within its discretion in refusing to hold a hearing, and therefore affirm the Commission's decision.
 
 I.
 
 3
 The nuclear fuel that provides the power in a reactor is packaged in rods. When in use, these rods are contained in steel pressure vessels inside the reactor. The steel walls of the vessel are constantly exposed to radiation; this exposure causes the metal to become "embrittled," which means that it is prone to cracking or shattering when subjected to rapid changes in temperature or pressure. These sudden changes are called "pressurized thermal shock" ("PTS"). The underlying issue in Lorion's appeal is the risk posed by PTS to the safety of the steel vessels in Turkey Point Unit #4.
 
 
 4
 Excessive vessel embrittlement could lead to severe consequences. When a nuclear power plant is faced with an emergency, one of its safety steps is to flood the reactor core with cold water. Without this water, the fuel rods could overheat and burn through the vessel walls, resulting in an infamous "meltdown." The risk is that the sudden temperature change can cause embrittled walls or weld joints to crack, allowing the radioactive coolant water to escape. See generally Edelson, Thermal Shock--New Nuclear-Reactor Safety Hazard?, Popular Science, June 1983, at 55.
 
 
 5
 In 1981, concern about the embrittlement problem led petitioner, on behalf of the Center for Nuclear Responsibility (of which Lorion was the sole member) to write a short letter to the NRC concerning Turkey Point Unit #4. Her letter noted that the Commission itself had identified this reactor as one of eight around the country that were vulnerable to cracking caused by PTS. Based on this, Lorion asked that the NRC initiate license review procedures, to consider suspending FPL's license until the reactor was proven safe. See Lorion v. Nuclear Regulatory Commission, 712 F.2d 1472, 1473 (D.C.Cir.1983).
 
 
 6
 The Commission treated Lorion's letter as an enforcement request under 10 C.F.R. Sec. 2.206 (1985). Section 2.206(a) provides that
 
 
 7
 Any person may file a request [with the NRC] to institute a proceeding pursuant to [10 C.F.R.] Sec. 2.202 to modify, suspend, or revoke a license, or for such other action as may be proper.... The requests shall specify the action requested and set forth the facts that constitute the basis for the request.
 
 
 8
 On November 5, 1981, the NRC denied petitioner's request. Florida Power and Light Co., 14 N.R.C. 1078 (1981). The Commission stated that its staff had been studying the situation, and that based on the available information, no immediate licensing action was necessary. Id. at 1082-83. The reply acknowledged that embrittlement could present a long term problem, but it assured Lorion that it was monitoring Turkey Point # 4, and that the "NRC will take timely action in relation to the reactor vessel problem." Id. at 1083.
 
 
 9
 Lorion appealed, but this court dismissed for lack of subject matter jurisdiction. Lorion, 712 F.2d at 1478-79. The Supreme Court reversed and remanded, ordering us to reconsider petitioner's claims on the merits. Florida Power & Light Co. v. Lorion, --- U.S. ----, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). On the same day that it decided Lorion, however, the Court also handed down Heckler v. Chaney, --- U.S. ----, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In Heckler the Court held that the refusal by an agency to take enforcement action was presumptively unreviewable. The Lorion Court therefore invited us to consider the effects of Chaney on remand. 105 S.Ct. at 1602 n. 8.
 
 
 10
 The case is now before us again. Lorion's legal theory is that the NRC's decision not to take any enforcement action was an abuse of discretion; for relief, she asks that this court instruct the Commission to order FPL to "show cause" why its operating license should not be suspended or revoked. In the alternative, petitioner claims that the court should remand to the NRC for a reconsideration of her request, with the opportunity for her to provide additional evidence.
 
 II.
 
 11
 We first address the question of whether the NRC's decision not to issue a show cause order is reviewable. In Heckler v. Chaney, the Supreme Court pointed out the difficulties of appellate scrutiny of an agency's choice not to enforce its regulations in a particular case. The Court wrote that this type of decision "often involves a complicated balancing of a number of factors which are peculiarly within [an agency's] expertise.... [t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." 105 S.Ct. at 1656. Based on these considerations, Chaney held that decisions not to enforce are "presumed" to be "committed to agency discretion by law" under the Administrative Procedure Act, and thus free from judicial review. Id.; 5 U.S.C. Sec. 701(a)(2) (1982).
 
 
 12
 This presumption may be rebutted. A court may review a decision when the agency's governing statute provides guidelines as to when the agency must take enforcement action. Chaney, 105 S.Ct. at 1656-57; cf. Dunlop v. Bachowski, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (cited by Chaney as an example where governing statute gave court "law to apply"). The crucial consideration is whether Congress intended to circumscribe agency enforcement discretion, and has provided statutory standards for the reviewing court to follow. 105 S.Ct. at 1657. Chaney did not decide, however, whether non-statutory standards could similarly restrict agency discretion; the Court "[left] to one side the problem of whether an agency's rules might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce." Id. at 1658 (emphasis added).
 
 
 13
 The parties admit that the application of Chaney to this case raises difficult questions. Although we doubt that on the facts before us the NRC's discretion is restricted by the Atomic Energy Act, 42 U.S.C. Secs. 2011-2296 (1982), petitioner argues that the regulations and NRC precedent require the Commission to initiate action when certain types of health and safety issues are raised. She also claims that the NRC's decision was not "analogous" to the type of enforcement action before the Court in Chaney, so that the presumption of non-reviewability does not apply.
 
 
 14
 Even though it is a "threshold" question, the court need not plumb the intricacies of this reviewability conundrum in the instant case. The merits of Lorion's underlying claims are sufficiently clear that we can and should avoid the potentially far-reaching questions on the scope of Chaney. The decision to avoid a difficult threshold question and resolve the substantive dispute is not new; both the Supreme Court and this court have used the procedure to restrict cases to their narrowest possible holding, particularly when the threshold question involves important constitutional or public policy issues. In Chinese American Civic Council v. Attorney General of the United States, 566 F.2d 321 (D.C.Cir.1977), we refused to decide a complex standing question, and instead resolved the underlying dispute. We found that "[p]rudential considerations also restrain us from deciding the difficult and unquestionably far-reaching standing question when the merits of the case readily provide a fair, clear resolution of the appeal." Id. at 325 (footnote omitted); see also Chandler v. Judicial Council, 398 U.S. 74, 86-89, 90 S.Ct. 1648, 1654-56, 26 L.Ed.2d 100 (1970) (Court declined to reach jurisdictional question because petitioner failed to establish underlying case). We find that this case presents a similar situation, and therefore turn to whether the Commission abused its discretion in denying Lorion's enforcement request.
 
 III.
 
 15
 Petitioner makes three arguments that concern the merits of her appeal. First, she says that the NRC ignored its own policies and precedent in deciding not to institute a license review procedure. The NRC has ruled that whenever a request for enforcement is made under 10 C.F.R. Sec. 2.206, the Commission is required to issue a show cause order if it decides that "a substantial health and safety issue" has been raised. Consolidated Edison Co. of New York, 2 N.R.C. 173, 176 (1975), cited in Florida Power & Light v. Lorion, 105 S.Ct. at 1601; In re Philadelphia Electric Co., 22 N.R.C. 149 (1985). Lorion argues that the NRC has conceded that the integrity of steel pressure vessels is a substantial safety issue, and that it was therefore an abuse of discretion not to take action.
 
 
 16
 Petitioner admits that the Commission never explicitly characterized the potential for vessel embrittlement as a "substantial" safety issue. She notes, however, that in the NRC response to her letter, it referred to the reactor vessel "problem," and that in an unrelated policy statement, the NRC staff considered embrittlement a "safety concern." NRC Policy Issue, SECY-81-286, Enclosed Memo at 3-4 (May 4, 1981) (April 28, 1981 memo from Eisenhut to Denton). Even more significant, in Lorion's eyes, is a letter from the Commission to FPL, stating that the vessel embrittlement at Turkey Point Unit # 4 was "approaching levels of concern." Letter from Darrell G. Eisenhut, Director, Division of Licensing, Office of Nuclear Reactor Regulation to Robert E. Uhrig, Vice President, Florida Power & Light Co. (Aug. 21, 1981). Because of this concern, the letter required FPL to submit information, under oath, on the condition of the reactor. Id.; see 10 C.F.R. Sec. 50.54(f) (1985) (Commission authority to require additional information).
 
 
 17
 We cannot accept the contention that the NRC has implicitly categorized the concerns raised by petitioner as "substantial health and safety" problems. This phrase is a term of art within the Commission, because it is the language reserved as a trigger for action rather than a description of the severity of the concern. The language of the Commission's references here shows that it considered embrittlement a problem, but not necessarily a "substantial" problem that would mandate a hearing procedure. The Commission's precedents make it clear that it is not obligated to take enforcement action "whenever we receive information adverse to the integrity of existing nuclear power safety or safeguard systems." In re Nuclear Regulatory Commission, 5 N.R.C. 16, 21 (1977), citing Nader v. Nuclear Regulatory Commission, 513 F.2d 1045, 1054-55 (D.C.Cir.1975). We are not convinced that the NRC decided that embrittlement was a substantial issue simply because the problem was "approaching levels of concern."
 
 
 18
 The broader question of whether a particular issue should be considered substantial, and thus whether enforcement action is required, must be left to the Commission's discretion. Porter County Chapter v. Nuclear Regulatory Commission, 606 F.2d 1363, 1369 (D.C.Cir.1979). We find that the NRC reasonably concluded with respect to Turkey Point Unit # 4 that this was not such an issue at this time. As it pointed out in the response to Lorion's letter, the Commission had been studying the pressure vessel problem and had concluded that the risk to public health was very low. It acknowledged that there was the potential for problems in the long run, but noted that it was working to correct the matter through an ongoing, plant-specific investigation. Florida Power and Light, 14 N.R.C. at 1083. Based on the record, we cannot say that the Commission abused its discretion in refusing to consider Lorion's concerns "substantial," or to institute a licensing procedure.
 
 
 19
 Petitioner's second claim is that the NRC's rejection of her enforcement request was arbitrary because it failed to consider all the relevant evidence. She argues that two critical documents--which she believes clearly show the danger of the reactor--were never mentioned by the Commission in its response to her letter. In her brief, Lorion also provides a long list of other documents that were available to the Commission, but that either were not mentioned or not discussed in the reply. She suggests that the failure to even acknowledge the evidence means that it was not properly considered, and that the ultimate decision was therefore irrational.
 
 
 20
 The two crucial documents Lorion cites both purport to show that the steel vessels at Turkey Point are embrittled beyond safe levels. The first is a 1976 report to the NRC, stating that the embrittlement in Unit # 4 was both higher than expected and higher than the embrittlement in Unit # 3. The second document is the response by Florida Power to the NRC request for information. In this response, FPL supplied data to show the condition of reactor Unit # 4, based on data gathered from Unit # 3; the company concluded that it was "more representative" of the conditions at Unit # 4 than the Unit # 4 data itself. Lorion implies that FPL is trying to camouflage the problems with the # 4 reactor by presenting irrelevant evidence.
 
 
 21
 It is true that an agency has a duty to consider all the evidence, and to explain its decision fully. City of Charlottesville v. Federal Energy Regulatory Commission, 661 F.2d 945, 950 (D.C.Cir.1981); Asarco Inc. v. Environmental Protection Agency, 616 F.2d 1153, 1159 (9th Cir.1980). It does not necessarily follow, however, that the failure to mention certain evidence means that it was not considered, nor does it follow that an explanation is incomplete unless it dutifully lists all the evidence that the Commission examined. The NRC's denial of a request for a show cause order will be upheld as long as all the necessary factors were considered, and provided that the statement of reasons given permits a "rational understanding of the basis for [the] decision." Consolidated Edison Co., 2 N.R.C. at 175; see Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).
 
 
 22
 The Commission easily met its obligation here. The basis of the NRC's decision was explained in sufficient detail to allow this court to conduct a meaningful review. There will be times, of course, when a reasoned response is impossible without a discussion of contrary evidence, particularly when that evidence is mentioned in the enforcement request. But as long as the Commission's reply fairly addresses the issues raised, the failure to rebut every argument raised by petitioner is not a per se abuse of discretion. To require the NRC to mention and analyze every document relevant to a hearing request would completely clog an agency's decisional process. There is nothing in administrative law that allows a complainant to filibuster the processes with a huge number of documents.
 
 
 23
 Lorion's final argument warrants only brief mention. She asks this court to consider the evidence on embrittlement and reverse the NRC's decision; she claims that the overwhelming evidence makes its "impossible" to conclude that no substantial safety issue was presented. This misinterprets our scope of review, and ignores the latitude we must afford the Commission's decisions. Courts are required to give their highest level of deference to decisions involving novel questions at the "frontiers of science." Baltimore Gas & Electric Co. v. National Resources Defense Council, 462 U.S. 87, 103, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983). The susceptibility of steel reactor vessels to pressurized thermal shock seems to be just such an issue. We would only overturn the Commission's decision if it were completely unsupported by the record; because that is not the case, we decline to substitute our judgment for that of the NRC's. See Porter County, 606 F.2d at 1367-70.
 
 CONCLUSION
 
 24
 The NRC provided a reasoned explanation for its decision in this case and thus it did not abuse its discretion by refusing to issue a show cause order. We have considered the rest of petitioner's claims, and find them similarly unpersuasive. We therefore affirm.
 
 
 25
 It is so ordered.
 
 
 
 *
 Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 291(a) (1982)