Jacob ARNOW, Eckhard Festag, David Kraft, Susan Michetti, Patricia Schaffner, and Abe Sklar, Petitioners,

v.

UNITED STATES NUCLEAR REGULATORY COMMISSION, Respondent,

and

Commonwealth Edison Company, Intervening Respondent.

No. 87–1732.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1988.
Decided Feb. 3, 1989.*

* Pursuant to Circuit Rule 40(f), this opinion has

been circulated among all judges of this court in

regular active service. No judge favored a rehearing in banc on the question of this court's jurisdiction to review nonenforcement decisions of the Nuclear Regulatory Commission. Judge Cudahy did not participate in the consideration or decision of this case.

John L. Stainthorp, Peoples Law Office, Chicago, Ill., for petitioners.

Charles E. Mullins, U.S. Nuclear Regulatory Com'n, Washington, D.C., Philip P. Steptoe, III, Sidley & Austin, Chicago, Ill., for respondent.

Before RIPPLE, MANION and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

▌ The petitioners, various persons residing in Illinois,[1] seek review of a final order of the respondent, the Nuclear Regulatory Commission (NRC), denying their request for issuance of an order to show cause why certain nuclear power plants owned and operated by the intervening respondent, Commonwealth Edison Company (CECo), should not be suspended from operation and retested. The petitioners' primary concern is that the containments of those nuclear power plants might be inadequate to prevent the spread of radioactive material during a nuclear accident. In denying the petition, the Director of the NRC's Office of Nuclear Reactor Regulation (NRR) determined that the concerns of the petitioners were groundless. Because we hold that section 701(a)(2) bars our review, we deny the petition for want of jurisdiction.

I

Background

A. *Procedural Posture*

The petitioners commenced this action by filing a petition with the NRC on August 30, 1986. The petition, captioned an "Emergency Relief Petition," alleged that deficient leak-rate testing of nuclear containments at CECo nuclear power plants had created an unsafe situation. The petition requested the NRC to issue an order to show cause upon CECo to explain "why the operating license of the Unit 1, Zion Nuclear Power Plant, and same of the Unit 1, LaSalle County Nuclear Power Plant, and

---

1. The petitioners in this case were captioned "Citizens of Illinois." However, as the NRC points out in its brief, the "petition was filed by a number of individuals, not by any organization." Respondent's Br. at 3 n. 2. The government requests only that the petitioners be listed individually. We note that appeals seeking review of agency decisions are controlled by Rule 15 of the Federal Rules of Appellate Procedure. Rule 15 requires that "the petition [for review] shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed." Fed.R.App.P. 15(a). We believe that the petitioners have met the strictures of Rule 15. *Cf. Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988) ("failure to name a party in the notice of appeal is ... a failure of that party to appeal"); Fed.R.App.P. 3(c) ("An appeal shall not be dismissed for informality of form or title of the notice of appeal."). The petition for review filed with this court states that "the full names of every party or amicus called collectively as 'CITIZENS' or 'APPELLANT' is stated in Exhibit A." Exhibit A contains the signatures of the ten individuals who filed the original petition with the NRC. *See*

Fed.R.App.P. 15(a) ("If two or more persons are entitled to petition the same court for review of the same order and their interests are such as to make joinder practicable, they may file a joint petition for review and may thereafter proceed as a single petitioner."). Counsel for the petitioners has informed the court by affidavit that he represents six of the original petitioners. The four other original petitioners have not entered an appearance before this court. *See* Circuit Rule 12(c). Accordingly, we order, *sua sponte,* that the docket entry for this case be altered to list the names of the six individuals who filed the original petition with the NRC and are represented by counsel.

We also note that the petition did not name the United States as a party respondent. Under the Hobbs Act, 28 U.S.C. § 2344, the United States "shall be" a party. All subsequent pleadings have been served on the United States, and the government acknowledges that, under Federal Rule of Appellate Procedure 15(a), the initial defect is not fatal. *See* Respondent's Br. at 2 n. 1.; Fed.R.App.P. 15(a) ("The United States shall ... be deemed a respondent if so required by statute, even though not so designated in the petition.").

same of the Unit 1, Byron Nuclear Power Plant should not be suspended and containment systems thereof be retested in accordance with Appendix J to 10 C.F.R., Part 50." R.D503 at 1.[2]

On October 22, 1986, Harold C. Denton, the Director of the NRR, acknowledged receipt of the petition by publishing a notice in the Federal Register. At that time, he denied the petitioners' request for emergency relief, but noted that the NRC would review the petition and would issue a formal ruling within a reasonable time. *See* Petitioners' App. at 26 (copy of notice filed with the Office of the Federal Register). In a written decision on February 10, 1987, he denied the petition. The Director filed the decision with the office of the Secretary of the NRC. The NRC declined to undertake a discretionary review and therefore the Director's decision became final agency action on March 10, 1987.[3] The petitioners timely filed their petition for review with this court on May 8, 1987.[4] Thereafter, CECo filed a brief as an intervening respondent.

**2.** Specifically, the petition alleged that the testing at the CECo nuclear power plants was defective for five reasons. These five reasons were stated as follows:

(1) The Zion tests used the incorrect weighting coefficients, which was confirmed by the failure of the verification test;
(2) The computer programs used by CECo in the tests allowed impermissible deletion and alteration of data recorded during the test;
(3) Data produced during the Zion 1983 test had in fact been substantially altered and there existed a possibility of using these computer programs to diminish the calculated leak rates for meeting the allowable values;
(4) The tests did not comply with 10 C.F.R. Part 50, App.J in that a test of the Zion containment system in July–August 1984 was followed by a failing verification test and that the NRC thereafter allowed an illegal short duration test;
(5) That the gas mass equation used in calculating the leak rate was inaccurate.

Petitioners' Br. at 4.

**3.** A final order of the NRR Director filed with the NRC becomes final agency action if the NRC does not act to reverse or modify the Director's decision within 25 days. 10 C.F.R. § 2.206(c)(1) (1988). Although the NRC's regulations provide that the NRC's review is discretionary, *see id.,* the Sixth Circuit has suggested that "[i]t is apparently the practice of the Commission to review each denial of a § 2.206 petition to assure

Subsequent to the filing of the petitioners' petition for review, the respondents filed a motion to dismiss the petition for want of jurisdiction. On October 15, 1987, this court issued an order which stated that "respondents' motion to dismiss will be considered with the merits of this appeal by the panel assigned to consider this case." *Citizens of Illinois v. NRC,* No. 87–1732, order at 2 (7th Cir. Oct. 15, 1987).

**B. Facts**

The petitioners challenge certain tests conducted by CECo, and approved by the NRC, on the containments of three nuclear power reactors owned and operated by CECo. The containment at a nuclear power plant basically is a large shielding structure that surrounds the nuclear reactor. This shield is designed to contain radioactive material in the event of a nuclear accident. An effective containment therefore ensures that any exposure of the public to radioactive gases will be minimal. To test the effectiveness of a containment, nuclear power plant licensees conduct leak-

that the director has not abused his discretion." *Dickinson v. Zech,* 846 F.2d 369, 371 (6th Cir. 1988).

**4.** The petition for review was prepared and signed by Dr. Zinovy V. Reytblatt. Dr. Reytblatt also prepared the original brief on behalf of the petitioners. In an order docketed June 19, 1987, this court stated that "[a]s far as we know, Reytblatt is not an attorney; accordingly, he may not represent anyone other than himself. The brief, therefore, is ordered stricken." The order did not address, however, the petition for review also signed by Dr. Reytblatt. In a similar context, in an opinion authored by then-Judge Stevens, we held that "[e]ven if [a] notice was defective because not signed by a member of the local Bar, such a defect *was surely not jurisdictional.* . . . No motion to dismiss the first appeal having been made in this court, we need not consider the significance of the failure to have the notice executed by a member of the local Bar." *Tryforos v. Icarian Dev. Co.,* 518 F.2d 1258, 1264 (7th Cir.1975) (emphasis supplied), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); *cf. Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 830–31 (7th Cir.1986) (per curiam) (permitting *pro se* appellant to sign notice of appeal and litigate her claim even when opposing party made timely objection to lay advocate filing both notice of appeal and brief).

rate tests. Leak-rate tests are designed to measure how much air might escape under a worst case scenario during a "loss-of-coolant accident."[5] Apparently, no two nuclear reactors have the same leak rate due to various factors such as the containment size, and the configuration, location, meteorological and demographic characteristics of the nuclear plant site. *See* Respondent's Br. at 7.

II

Opinion of the NRR Director

In addressing the merits of the instant case, the Director of the NRR first characterized the contentions of the petitioners as falling into three categories: "(1) allegations regarding the general methodology associated with CILRTs [containment integrated leak-rate tests], (2) allegations concerning the validity of certain CILRTs performed at the Zion Nuclear Power Station Unit 1, in 1982 and 1984, and (3) allegations related to certain computer programs employed by CECO in conducting CILRTs for the Zion, LaSalle, and Byron units." *In Re: Commonwealth Edison Co.*, 25 N.R.C. 121, 122 (1987). The Director then dismissed the allegations contained in the first two categories by noting that he had addressed the same or similar concerns in previous petitions brought pursuant to 10 C.F.R. § 2.206. He concluded that the concerns raised in the instant petition already had received sufficient consideration from the NRC and therefore he refrained from discussing them further.

The Director then addressed the third category of allegations in the petition—deficiencies in the computer programs used during the CILRTs at the CECo plants. First, the petition alleged that the program options "EDIT DATA" and "DELETE DATA FILED" were included in the test programs "for the express purpose of malicious falsification of the test record." *Id.* at 125. The Director determined, however, that "the subject options are a necessary part of the program; they literally permit the compilation of bona fide test data." *Id.* The Director then addressed the second challenge. The petition alleged that the computer program options called "ERASE" or "WIPE" can remove and switch data from CILRTs without leaving a trace that data were deleted or replaced. In dismissing this challenge, the Director concluded:

Such an option has legitimate uses. The option may be used to purge erroneous data from storage, i.e., sensor data that may have become garbled in transmission to storage memory. The option may also be used to clear the storage memory prior to the start of an actual test, and to facilitate the performance of parameter studies using archived data. The petition is incorrect in stating that the program leaves no record that data were deleted. The fact that data have been deleted can be readily ascertained by examining the time intervals between data sets. The time at which a data set is obtained is not altered by the "WIPE" option. Therefore, since data are ac-

5. Appendix J of Part 50 to Title 10 of the Code of Federal Regulations contains regulations pertaining to how and when the leak-rate tests should be conducted. As the introduction to Appendix J states:

One of the conditions of all operating licenses for water-cooled power reactors as specified in section 50.54(*o*) is that primary reactor containments shall meet the containment leakage test requirements set forth in this appendix. These test requirements provide for preoperational and periodic verification by tests of the leak-tight integrity of the primary reactor containment, and systems and components which penetrate containment of water-cooled power reactors, and establish the acceptance criteria for such tests.

10 C.F.R. Part 50, App.J (1988).

Appendix J further provides that leak-rate tests are to be carried out pursuant to industry standards. The standards followed by CECo were promulgated by the American National Standards Institute (ANSI) in 1981. ANSI/ANS 56.8–1981. The results of the leak-rate tests conducted pursuant to the ANSI standards are expressed as a percentage of the air mass in the containment volume for a twenty-four hour period. The NRC regulations set forth two purposes for such testing: first, it ensures that the licensee can protect the public health and safety in the event of an accident; and second, it indicates structural weak points where gases could escape the containment shield in the event of a loss-of-coolant accident. *See generally* 10 C.F.R. Part 50, App.J (1988); Respondent's Br. at 7.

quired at prescribed, uniform intervals, missing data sets are easily detected. *Id.*

The Director then addressed and summarily dismissed further challenges that the use of these options would result in an illegal amount of data rejection, that the computer programs could be manipulated to reinstate previously discarded data, and that these computer programs impermissibly affected the weighting coefficients used to calculate the containment air mass and average temperature.[6]

### III

### Discussion

■ Although the District of Columbia Circuit has addressed the merits of a petition for review in this context without first resolving the jurisdictional question, *see Lorion v. United States Nuclear Regulatory Comm'n,* 785 F.2d 1038 (D.C.Cir. 1986),[7] we believe that our colleagues in the First Circuit were correct in *Massachusetts Public Interest Group, Inc. v. United States Nuclear Regulatory Commission,* 852 F.2d 9, 15 (1st Cir.1988) when they determined that the threshold issue of jurisdiction ought to be resolved before any discussion of the merits.

#### 1. Contentions of the Parties

The NRC contends that, under the Supreme Court's decision in *Heckler v. Cha-*

ney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed. 2d 714 (1985), its action denying the relief requested by the petitioners is not subject to judicial review. In *Chaney,* the Supreme Court held that, under the Food, Drug and Cosmetics Act (FDCA), the Food and Drug Administration's (FDA) decision not to investigate a petition by death-row inmates challenging the safety of certain drugs used for human execution was not subject to judicial review. The Court based its holding primarily on the ground that courts would have no law to apply under the FDCA in reviewing the determination of the FDA. Here, the NRC specifically argues that the presumption against judicial review of agency nonenforcement decisions, which the Supreme Court set forth in *Chaney,* applies to the NRC's decision not to undertake the enforcement proceedings requested by the petition.[8] In the NRC's view, the Atomic Energy Act confers broad and largely undefined discretion on the NRC to effectuate the congressional intent underlying the Act:

None of [the Act's] general provisions, all of which are framed in the permissive, provides any guidance on how the agency is to exercise its enforcement discretion, much less requires the exercise of Commission enforcement authority in a particular case. Clearly, under the rationale of *Heckler,* these Atomic Energy Act provisions do not evidence a Con-

---

**6.** The Director succinctly summarized his decision:

The Reytblatt affidavit makes numerous assertions of impropriety which appear to evolve from an imprecise understanding of the functions of certain options typically provided for data control in leak test computer codes, a misinterpretation on [sic] the information appearing on printouts of data sets and a misunderstanding of regulatory requirements in industry guidelines. In any event, while the Staff does not review and approve computer codes used in the industry for the leak rate testing of containment structures, as noted above, NRC inspectors carefully scrutinize all aspects of such testing and obtain raw test data for analysis to independently assess the acceptability of leak rate test results. This has been done for each of the facilities identified by the Petitioners. NRC inspectors have observed CILRTs conducted by CECO and analyzed test data, and have found no evidence

of wrongdoing on the part of CECO. The Staff concludes, therefore, that the Petitioners' claims have no technical or safety merit.
25 N.R.C. at 127.

**7.** In *Dickinson v. Zech,* 846 F.2d 369, 372–73 (6th Cir.1988), the Sixth Circuit explicitly declined to reach the jurisdictional question we address here because the Director had not reached a final decision with respect to the petitioner. The court held that the denial of emergency relief did not constitute final action reviewable by the court of appeals. Nevertheless, the court opined that, if it had jurisdiction over the emergency order, it would have sustained the action of the Director.

**8.** The intervening respondent, CECo, "takes no position on the question whether the Court has jurisdiction to entertain the Petition for Review." CECo's Br. at 8.

gressional intent to rebut the presumption of nonreviewability that accompanies agency refusal to take enforcement action.

Respondents' Motion to Dismiss at 13.

The petitioners contend that *Chaney* is distinguishable factually because, unlike the FDA, the NRC already had committed its resources to investigate the allegations in the petition. In addition, they submit that the Atomic Energy Act, unlike the FDCA, provides sufficient law for a court of appeals to apply in reviewing a NRC nonenforcement decision:

> In the Atomic Energy Act Congress clearly put a premium upon safety and mandated that nuclear power generation be undertaken with full regard for the health and safety of the public. The NRC has translated this concern into practical rules, which, among other things, mandate that there must be effective containment systems. There is, therefore, no problem in this case in determining what law should apply.

Petitioners' Br. at 17.

### 2. Analysis

#### a.

Our jurisdiction to review decisions of the NRC is found in 28 U.S.C. § 2342(4), a

provision of the Administrative Orders Review Act, referred to commonly as the Hobbs Act. The Supreme Court explained this provision in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985):

> Under 28 U.S.C. § 2342(4), ... the courts of appeals have exclusive jurisdiction over petitions seeking review of "all final orders of the Atomic Energy Commission [now the Nuclear Regulatory Commission] made reviewable by section 2239 of title 42." Title 42 U.S.C. § 2239(b) provides that the Hobbs Act covers review of "[a]ny final order entered in any proceeding of the kind specified in subsection (a) [of section 2239]." Subsection (a) proceedings are those "for the granting, suspending, revoking, or amending of any license." 42 U.S.C. § 2239(a)(1).

*Id.* at 733, 105 S.Ct. at 1601. In *Lorion*, the Supreme Court addressed the issue of whether this statutory framework confers exclusive subject matter jurisdiction on courts of appeals to review decisions of the NRC denying petitions made pursuant to 10 C.F.R. § 2.206.[9] The Supreme Court determined that the provision did so. However, the Court did not address squarely the issue before us here:[10]

**9.** Section 2.206 of Title 10 of the Code of Federal Regulations provides in relevant part:

(a) Any person may file a request to institute a proceeding pursuant to section 2.202 to modify, suspend, or revoke a license, or for such other action as may be proper....

(b) Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director of the NRC office with responsibility for the subject matter of the request shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to his request, and the reasons for the decision.

10 C.F.R. § 2.206 (1988).

**10.** Prior to the Supreme Court's decision in *Lorion*, this court reviewed decisions of the NRC denying enforcement of § 2.206 petitions. *See City of West Chicago v. NRC*, 701 F.2d 632, 653 (7th Cir.1983); *Rockford League of Women Voters v. NRC*, 679 F.2d 1218, 1219–21 (7th Cir. 1982). However, in these cases, as in *Lorion*, the only jurisdictional issue presented for adjudication was whether the court of appeals (rather than the district court) had initial subject

matter jurisdiction. The issue of whether review was permissible at all in light of § 701(a)(2) of the Administrative Procedure Act was not addressed. In *Rockford*, however, this court did point to the difficulty inherent in accomplishing the task of judicial review without ascertainable standards. *See* 679 F.2d at 1222 (where the Commission has violated no statute, regulation, or other rule, the court must review "pure agency inaction—that is, agency refusal to exercise a power which is not also a duty"). *See also Illinois v. NRC*, 591 F.2d 12, 14–16 (7th Cir.1979) (opinion does not mention jurisdiction, but notes "broad discretion" bestowed by Congress on the NRC).

In addition, a court's pre-*Chaney* decision to review an agency's nonenforcement decision need not control that court's post-*Chaney* jurisdictional analysis of the same sort of agency decision. *See Falkowski v. EEOC*, 764 F.2d 907, 910–11 (D.C.Cir.1985). In a pre-*Chaney* decision, the District of Columbia Circuit rejected the government's contention that a Department of Justice decision was unreviewable. However, upon remand from the Supreme Court for reconsideration in light of *Chaney*, the court found the same Department of Justice decision

[N]o party has argued that under the [Administrative Procedure Act], 5 U.S.C. § 701(a)(2), Commission denials of section 2.206 petitions are instances of presumptively unreviewable "agency action . . . committed to agency discretion by law" because they involve the exercise of enforcement discretion. *See Heckler v. Chaney*, [470 U.S. 821] at 828–835 [105 S.Ct. 1649, 1654–1658, 84 L.Ed.2d 714 1985]. Because the question has been neither briefed nor argued and is unnecessary to the decision of the issue presented in this case, we express no opinion as to its proper resolution. The issue is open to the Court of Appeals on remand should the Commission choose to press it.

*Id.*, 470 U.S. at 735 n. 8, 105 S.Ct. at 1602 n. 8.[11] We now address and resolve this question.

### b.

Under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–706, final actions of governmental agencies generally are presumed to be reviewable by the courts. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967); *see also* 5 U.S.C. §§ 702 & 704. However, section 701(a)(2) precludes judicial review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).[12] The Supreme Court directly addressed this exception to the general rule of judicial reviewability in *Overton Park*. The Court noted that the provision "is a very narrow exception," and "that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Overton Park*, 401 U.S. at 410,

91 S.Ct. at 820–21 (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

Subsequently, in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court further explicated the scope of section 701(a)(2). In that case, several death-row inmates in Texas and Oklahoma brought suit for review of a denial by the FDA to exercise its enforcement power to ensure that states only use drugs that are "safe and effective" for human execution. The FDA had approved the challenged drugs for certain uses, but not for executions. The inmates were concerned that the drugs might cause "torturous pain," rather than "produc[ing] death quickly and without pain." *Chaney v. Heckler*, 718 F.2d 1174, 1177 (D.C.Cir. 1983), *rev'd*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In refusing to investigate the petition, the FDA asserted that (1) it did not have jurisdiction to regulate state-sanctioned executions involving lethal injections, and (2) it had inherent agency discretion to refrain from undertaking such an activity.

The Supreme Court held that the court of appeals did not have jurisdiction. Although it noted that the APA provides a presumption of reviewability of agency actions, the Court reasoned that, "before any review at all may be had, a party must clear the hurdle of § 701(a). That section provides that the chapter on judicial review 'applies, according to the provisions thereof, except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Chaney*, 470 U.S. at 828, 105 S.Ct. at 1654. In interpreting section 701(a)(2), the Court reasoned:

> [R]eview is not to be had if the statute is drawn so that a court would have no meaningful standard against which to

---

unreviewable due to the "absence of any congressional pronouncements cabining the agency's discretion." *Falkowski*, 764 F.2d at 911.

**11.** On remand, the District of Columbia Circuit avoided resolution of the issue and proceeded to address, and dismiss, the merits presented by the petitioners. *Lorion v. NRC*, 785 F.2d 1038, 1041 (D.C.Cir.1986).

**12.** Section 701(a) reads:
   (a) This chapter applies, according to the provisions thereof, except to the extent that—
   (1) statutes preclude judicial review; or
   (2) agency action is committed to agency discretion by law.
   The NRC has not argued that § 701(a)(1) is applicable in this case.

judge the agency's exercise of discretion. In such a case, the statute ('law'), can be taken to have 'committed' the decision-making to the agency's judgment absolutely. This construction avoids conflict with the 'abuse of discretion' standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'

*Id.* at 830, 105 S.Ct. at 1655.

Consequently, the Court held that a *refusal* to take *enforcement* action by an administrative agency is presumptively unreviewable by the courts. *Id.* at 831, 105 S.Ct. at 1655. The Supreme Court gave several reasons in support of its interpretation of section 701(a)(2): (1) an administrative agency is in the best position to assess its resources and technical expertise in claims brought under the statutes and regulations that it is charged to administer; (2) an agency determination not to enforce its authority, as opposed to exercising its authority, generally does not infringe upon an individual's property right or liberty interest; and (3) the situation is analogous to the unreviewable decision of a prosecutor concerning whether or not to indict an individual.

Despite the presumption of unreviewability, however, the Court noted that "the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. at 1656. As an example of a situation where the presumption adequately was rebutted by a petitioner, the *Chaney* Court

noted the earlier decision in *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (dispute under Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481 *et seq.,* requesting Secretary of Labor to investigate and file suit to set aside union election). In summarizing the *Dunlop* decision, the *Chaney* Court noted that "the Court of Appeals ... had found the 'principle of absolute prosecutorial discretion' inapplicable, because the language of the LMRDA indicated that the Secretary was required to file suit if certain 'clearly defined' factors were present. The decision, therefore, was not 'beyond the judicial capacity to supervise.' "[13] In contrast to the LMRDA, the *Chaney* Court noted that the FDCA's general provision for enforcement, 21 U.S.C. § 372,

> provides only that "[t]he Secretary is *authorized* to conduct examinations and investigations ..." (emphasis added). Unlike the statute at issue in *Dunlop,* § 332 gives no indication of when an injunction should be sought, and § 334, providing for seizures, is framed in the permissive —the offending food, drug, or cosmetic "shall be liable to be proceeded against."
> ... The Act's enforcement provisions thus commit complete discretion to the Secretary to decide how and when they should be exercised.

*Chaney,* 470 U.S. at 835, 105 S.Ct. at 1657–58.

Most recently, the Supreme Court has held that section 701(a)(2) precludes judicial review of personnel termination decisions by the Director of the Central Intelligence Agency because the relevant provision of the National Security Act, 50 U.S.C. § 403(c), "strongly suggests that its imple-

---

**13.** *Chaney,* 470 U.S. at 834, 105 S.Ct. at 1657. The court of appeals decision cited by the *Chaney* Court set forth these "clearly defined factors" as follows:

> [Section] 482(b) of the L–MRDA provides that after investigating a complaint, [the Secretary] must determine whether there is probable cause to believe that violations of § 481 have occurred affecting the outcome of the election. Where a complaint is meritorious and no settlement has been reached which would remedy the violations found to exist, the language and purpose of § 402(b) indicate

that Congress intended the Secretary to file suit. Thus, apart from the possibility of settlement, the Secretary's decision whether to bring suit depends on a rather straightforward factual determination, and we see nothing in the nature of that task that places the Secretary's decision "beyond the judicial capacity to supervise."

*Bachowski v. Brennan,* 502 F.2d 79, 88 (3d Cir. 1974) (quoting K. Davis, Administrative Law Treatise § 28.16 at 984 (1970 Supp.)) (footnotes omitted), *rev'd,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

mentation was 'committed to agency discretion by law.'" *Webster v. Doe,* —— U.S. ——, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (quoting 5 U.S.C. § 701(a)(2)). In defining what is meant by the statutory language "committed to agency discretion by law," the Court noted that "even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655).

c.

■ Only one court has addressed squarely[14] the applicability of section 701(a)(2) in the context of a nonenforcement decision by the NRC. *See Massachusetts Public Interest Research Group, Inc. v. NRC,* 852 F.2d 9 (1st Cir.1988) [hereinafter *MassPIRG*]. In *MassPIRG,* individuals petitioned the NRC for an order to show cause why a New England nuclear power plant should not remain closed or have its license suspended because of various concerns relating to the health and safety of the public. The NRC denied the petition and took no enforcement action against the nuclear facility. Before the First Circuit, the NRC argued that the court had no jurisdiction to review the nonenforcement decision because there was insufficient law to apply. The court agreed. After a thorough review of the Atomic Energy Act and the regulations and policy statements of the NRC, the First Circuit held that "given the lack of a meaningful standard of review in either the Atomic Energy Act of 1954 ... or the NRC regulations, the refusal of the NRC to issue a show cause order against [Boston] Edison is not subject to judicial review." *Id.* at 10.[15]

In addressing the same question presented to the First Circuit, we note that, under the analytical framework provided by the Supreme Court, our task must commence with a "careful examination of the statute on which the claim of agency illegality is based...." *Webster,* 108 S.Ct. at 2052;

14. Nevertheless, two courts of appeals, in dictum, have expressed conflicting impressions concerning the issue of whether there is law to apply under the Atomic Energy Act in the context of an NRC decision not to issue an order to show cause under § 2.206. *Compare Dickinson v. Zech,* 846 F.2d 369, 372 (6th Cir.1988) ("We do note, however, that the fact that the Commission reviews its director's denial of petitions for an abuse of discretion may indicate that there are indeed standards against which a final decision denying the petition may be reviewed by a court. Thus, there may well be 'law to apply.'") *with Lorion v. NRC,* 785 F.2d 1038, 1040 (D.C. Cir.1986) ("we doubt that on the facts before us the NRC's discretion is restricted by the Atomic Energy Act"). In neither case, however, did the court resolve the issue.

We are aware that other courts, including our own, have reviewed final orders of the NRC after the Supreme Court issued its opinion in *Chaney.* However, none of those courts addressed the question of appellate jurisdiction over a final order of the NRC in the context of an NRC nonenforcement decision. *See, e.g., Commonwealth Edison Co. v. NRC,* 830 F.2d 610 (7th Cir.1987); *Sierra Club v. NRC,* 825 F.2d 1356, 1359–60 (9th Cir.1987); *Eddleman v. NRC,* 825 F.2d 46, 48–49 (4th Cir.1987); *Ohio v. NRC,* 814 F.2d 258 (6th Cir.), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Finally, we note that courts of appeals, including our own, in addressing post-*Chaney* agency nonenforcement decisions under other statutes, have not hesitated to find those decisions unreviewable because Congress provided no law to apply. *See, e.g., Andrews v. Consolidated Rail Corp,* 831 F.2d 678 (7th Cir.1987) (holding nonenforcement decision of Department of Labor unreviewable under Rehabilitation Act); *Bethlehem Steel Corp. v. EPA,* 782 F.2d 645, 654–57 (7th Cir.1986) (holding EPA refusal to conduct a rulemaking proceeding unreviewable under Clean Air Act); *Schering Corp. v. Heckler,* 779 F.2d 683, 685–87 (D.C.Cir.1985) (holding nonenforcement decision of FDA unreviewable under FDCA); *Railway Labor Executives Ass'n v. Dole,* 760 F.2d 1021, 1024–25 (9th Cir.1985) (holding nonenforcement decision of Secretary of Transportation unreviewable under various railroad safety acts); *Gillis v. United States Dept. of Health and Human Servs.,* 759 F.2d 565, 575–78 (6th Cir.1985) (holding nonenforcement decision of Secretary of Health and Human Services unreviewable under Hill–Burton Act).

15. Although the *MassPIRG* court explained that "[n]one of the parties have argued that the controlling statute, the Atomic Energy Act, provides a standard within the meaning of *Chaney,*" 852 F.2d at 15, the court nevertheless addressed the issue, noting that "the general enforcement provisions of the Act are all framed in permissive language. They provide no guidance as to how the agency should exercise its discretion." *Id.*

see *Chaney*, 470 U.S. at 834, 105 S.Ct. at 1657; *see also Overton Park*, 401 U.S. at 411, 91 S.Ct. at 821. Here, that statute is the Atomic Energy Act. After reviewing the Act, the First Circuit concluded that Congress "provid[ed] no guidance as to how the agency should exercise its discretion." *MassPIRG*, 852 F.2d at 15. We agree. The Atomic Energy Act aligns closely with the FDCA, which the Supreme Court determined in *Chaney* provides courts with "no law to apply."[16] Indeed, its entire scheme vests very wide discretion in the agency. *See Public Serv. Co. v. NRC*, 582 F.2d 77, 82 (1st Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed. 2d 705 (1978). For instance, the general enforcement provisions of the Atomic Energy Act, like the general enforcement provision of the FDCA, 21 U.S.C. § 372, "*authorize[s]*" the NRC to "make such studies and investigations ... as the *Commission may deem necessary or proper* to assist it in [the] ... enforcement of this chapter...." 42 U.S.C. § 2201(c) (emphasis supplied); *cf.* 21 U.S.C. § 372 (under the FDCA, "[t]he Secretary is *authorized* to conduct examinations and investigations") (emphasis supplied). In addition, the NRC is "authorized" to "prescribe such regulations or orders as it *may deem necessary* ... to govern any activity authorized pursuant to this chapter ... in order to protect health and to minimize danger to life or property...." 42 U.S.C. § 2201(i) (emphasis supplied). Congress also has "authorized" the NRC to "make, promulgate, issue, rescind, and amend such rules and regulations as *may be necessary* to carry out the purposes of this chapter." 42 U.S.C. § 2201(p) (emphasis supplied). Likewise, the wording of the section relating to the revocation of licenses, like the provision in the FDCA providing for seizure of offending substances, 21 U.S.C. § 334, is permissive: "Any license *may* be revoked for any material false statement in the application or any statement of fact required under section 2232 of this title, or because of conditions ... which would warrant the Commission to refuse to grant a license on an original application...." 42 U.S.C. § 2236(a); *see Rockford League of Women Voters v. NRC*, 679 F.2d 1218, 1222 (7th Cir.1982) (section 2236(a) "permits but does not direct the NRC to revoke a license or permit...."); *cf.* 21 U.S.C. § 334 (under the FDCA, "[a]ny article of food, drug, device, or cosmetic that is adulterated or misbranded ... *shall be liable* to be proceeded against").

Finally, the section providing for injunction proceedings under the Atomic Energy Act, much like the injunction provision of the FDCA, 21 U.S.C. § 332, confers broad discretion upon the NRC. *See* 42 U.S.C. § 2280 ("[w]henever in the *judgment of the Commission* any person" has or will violate the Act, the Attorney General "may" apply for an injunction); *cf.* 21 U.S.C. § 332 (providing the FDA with no guidance as to when it should seek an injunction).[17]

16. We note that the Atomic Energy Act is quite dissimilar from the LMRDA, which the Supreme Court determined in *Dunlop* provides sufficient law for courts to apply. The relevant section of the LMRDA states:

> The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and

> such rules and regulations as the Secretary may prescribe.

29 U.S.C. § 482(b). Accordingly, while the statute arguably gives some discretion to the Secretary of Labor (unlike the Atomic Energy Act, the FDCA, and the National Security Act), the LMRDA contains some clearly defined factors that a court of appeals can apply upon review. *See supra* note 11. As the Supreme Court explicitly has noted, the LMRDA "quite clearly withdr[aws] discretion from the agency and provide[s] guidelines for exercise of its enforcement power." *Heckler v. Chaney*, 470 U.S. 821, 834, 105 S.Ct. 1649, 1657, 84 L.Ed.2d 714 (1985).

17. Similarly, the National Security Act provision that was at issue in *Webster* provides in relevant part, "the Director of Central Intelligence *may, in his discretion,* terminate the em-

Upon review of "the overall structure of the [Atomic Energy] Act," *Webster,* 108 S.Ct. at 2052, we believe it is apparent that Congress has entrusted the NRC with wide, unreviewable discretion in the area of agency enforcement. *See MassPIRG,* 852 F.2d at 15; *cf. Webster,* 108 S.Ct. at 2052–53 (Congress did not intend for courts to review personnel termination decisions by the CIA); *Chaney,* 470 U.S. at 837–38, 105 S.Ct. at 1658–59 (Congress did not intend for courts to review nonenforcement decisions of the FDA).[18] Accordingly, the presumption against reviewability of agency nonenforcement decisions is not rebutted here. *See Chaney,* 470 U.S. at 832–33, 105 S.Ct. at 1656–57. Indeed, as the First Circuit aptly summarized, " '[t]he Atomic Energy Act of 1954 is hallmarked by the amount of discretion granted the Commission in working to achieve the statute's ends. The Act's regulatory scheme "is virtually unique in the degree to which broad responsibility is reposed in the administering agency, free of close prescription in its charter as to how it shall proceed in achieving the statutory objective." ' " *MassPIRG,* 852 F.2d at 15 (quoting *Public Serv. Co.,* 582 F.2d at 82 (quoting *Siegel v. AEC,* 400 F.2d 778, 783 (D.C.Cir.1968))); *accord Illinois v. NRC,* 591 F.2d 12, 16 (7th Cir. 1979).

### d.

■ As pointed out by the District of Columbia Circuit in *Lorion v. United States Nuclear Regulatory Commission,* 785 F.2d 1038 (D.C.Cir.1986), "*Chaney* did not decide ... whether *non* -statutory standards could similarly restrict agency discretion; the court '[left] to one side the problem of whether an agency's *rules* might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce.' " *Id.* at 1040 (quoting *Chaney,* 470 U.S. at 836, 105 S.Ct. at 1658) (emphasis in original). Despite this open-ended language,

both the District of Columbia Circuit and the First Circuit subsequently have held that agency regulations can "provide a sufficient standard for meaningful review." *MassPIRG,* 852 F.2d at 16; *see Center for Auto Safety v. Dole,* 846 F.2d 1532, 1534 (D.C.Cir.1988) (per curiam); *see also Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir. 1987). We agree with the position articulated by these courts. *See generally Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957) ("While it is of course true that under [the applicable statute] the Secretary was not obliged to impose upon himself these more rigorous substantive and procedural standards, ... having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them."). Consequently, we must determine whether the regulations promulgated by the NRC provide us with an appropriate standard for judicial review.

In addressing this issue in the context of the regulations promulgated by the National Highway Transportation Safety Administration (NHTSA), the District of Columbia Circuit found no law to apply under the agency's applicable regulation—49 C.F.R. § 552.8. *See Center for Auto Safety,* 846 F.2d at 1534. Section 552.8 of Title 49 of the Code of Federal Regulations provides for enforcement of a petition if the NHTSA determines that there "is a reasonable possibility that the order requested ... will be issued at the conclusion of the appropriate proceeding." 49 C.F.R. § 552.8 (1987). In finding this language insufficient to establish judicial review, the court reasoned:

The regulation *sub judice* provides the court no way to second-guess the weight or priority to be assigned these elements. In particular, it would be unwise, and inconsistent with the broad mandate of the agency under the governing statute, to infer a mandatory allocation of the

---

ployment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States...." 50 U.S.C. § 403(c) (emphasis supplied).

18. *See also Lorion,* 470 U.S. at 750–52, 105 S.Ct. at 1610–11 (Stevens, J., dissenting) (Congress did not intend for courts to review nonenforcement decisions of the NRC).

agency's limited resources from the regulation at issue.

*Center for Auto Safety,* 846 F.2d at 1535.

■ Our review of the applicable NRC regulations convinces us that, like the NHTSA regulation, no standard of review is defined. Neither section 2.202, which provides for orders to show cause, nor section 2.206, which provides for requests for action, give us any meaningful "law to apply." *See* 10 C.F.R. § 2.202 (the "Director of Nuclear Reactor Regulation ... *may institute a proceeding* to modify, suspend, or revoke a license or for such other action as *may be proper* by serving on the licensee an order to show cause....") (emphasis supplied); 10 C.F.R. § 2.206(b) ("Within a reasonable time after a request [for a section 2.202 proceeding] ... has been received, the Director of the NRC office with responsibility for the subject matter of the request shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to his request, and the reasons for the decision."). The regulations clearly commit total discretion to the NRC on matters of enforcement. *See MassPIRG,* 852 F.2d at 16 ("The NRC regulations concerning section 2.206 petitions are entirely permissive."); *Rockford League of Women Voters,* 679 F.2d at 1222 ("[T]he implementing regulations [of the Atomic Energy Act] are likewise permissive rather than mandatory. The only thing the Director is required to do is, if he decides not to institute a revocation proceeding, to notify the requesting party in

writing of his decision and of the reasons for it....").

The petitioners contend, however, that other regulations, relating to the testing of containments and the revocation of licenses, provide sufficient law for us to apply. *See, e.g.,* 10 C.F.R. Part 50, App. A (1988); 10 C.F.R. Part 50, App.J (1988). The NRC has failed to respond to the petitioners' citations to these specific regulations. Nevertheless, after a thorough review of these regulations, we do not find that they provide us with the requisite law to apply. The regulations primarily set forth technical factors concerning the design of nuclear reactor containments and the test requirements for "preoperational and periodic verification ... of the leak-tight integrity of the primary reactor containment." 10 C.F.R. Part 50, App.J (1988). These regulations therefore merely set forth the methodology of containment construction and leak-rate testing; they provide no guidelines for the agency to follow in exercising its enforcement powers that we, as a reviewing court, could look to in adjudicating the NRC's decision not to take enforcement action.[19] As the Supreme Court succinctly explained in *Chaney,* "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." 470 U.S. at 831, 105 S.Ct. at 1655. Nothing in the regulations cited to us by the petitioners defines *how* the NRC's decision must be reached or mandates what action the NRC must take if it finds that the technical requirements of the regulations have not been met. Therefore, the presumption that an agency decision *not* to take enforcement

---

19. *See Chaney,* 470 U.S. at 832–33, 105 S.Ct. at 1656–57 (presumption of unreviewability rebutted "where substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers"); *see also Webster,* 108 S.Ct. at 2052 (statutory language "strongly suggests that its implementation was 'committed to agency discretion by law'" and, thus, unreviewable where Court could see "no basis on which a reviewing court could properly assess an Agency termination decision").

The petitioners also contend that 10 C.F.R. § 50.34(a) (1988), 10 C.F.R. § 50.40(a) (1988), and 10 C.F.R. 50.100 (1988) provide us with a sufficient standard for judicial review. How-

ever, § 50.34(a) merely sets forth the required contents of a preliminary safety analysis report. Such a report must be included, and prepared by the *applicant,* in an application for a construction permit. Section 50.40(a) simply provides that in applications for a license, the NRC "will be guided" by the "health and safety of the public." This is essentially the same language contained in the AEA itself. Finally, § 50.100 is an enforcement regulation that, like the statutory enforcement provisions, is worded in the permissive. Accordingly, we do not find that these regulations, either separately or in concert, alter our holding that we have no jurisdiction to review the petition.

action is an unreviewable action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), has not been rebutted.[20]

#### e.

 Despite our determination that the Atomic Energy Act and the regulations promulgated thereunder provide "no law to apply" and fail to rebut the presumption of nonreviewability, we do not hold that every decision of the NRC is insulated from judicial review. In *MassPIRG*, the First Circuit explicitly noted:

> [T]he courts ... may review NRC decisions which undermine its fundamental statutory responsibility to protect "the health and safety of the public." *See, e.g.*, 42 U.S.C. § 2236(c). In *Chaney*, the Court noted, without deciding, that an agency policy which "is so extreme as to amount to an abdication of its statutory responsibilities" might be reviewable because "the statute conferring authority on the agency might indicate that such decisions were 'not committed to agency discretion.'" 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4.

*MassPIRG*, 852 F.2d at 19; *see also Schering Corp. v. Heckler*, 779 F.2d 683, 687 (D.C.Cir.1985); *Railway Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1025 (9th Cir.1985) (Schroeder, J., concurring and dissenting). We need not confront this issue today. Here, the Director of the NRR investigated the claims raised in the petition and, in a written decision, found them to be without merit; the NRC agreed. The record simply is barren of any evidence indicating that the NRC abdicated its statutory responsibilities. Accordingly, we hold that section 701(a)(2) of the APA bars our review of the petition because Congress has committed agency enforcement decisions to the discretion of the NRC. Since review of this petition is barred by the

APA, we dismiss the petition for review for want of jurisdiction.

#### Conclusion

Because Congress has not provided us with any meaningful standard of review under the Atomic Energy Act, nor has the NRC under its own regulations, we must dismiss the petition for want of jurisdiction pursuant to section 701(a)(2) of the APA.

DISMISSED FOR WANT OF JURISDICTION.

---

**20.** The petitioners do not assert that the NRC's general policy statements or previous agency rulings provide us with sufficient law to apply. Nevertheless, we note that the First Circuit squarely addressed and rejected such contentions in *MassPIRG*, 852 F.2d at 17–18.