**CONSEJO DE DESARROLLO ECONOMICO DE MEXICALI, AC; Citizens United for Resources and the Environment; and Desert Citizens Against Pollution, Plaintiffs,**

v.

**UNITED STATES of America; Gale Norton, Secretary of the Department of the Interior; and John W. Keys III, Commissioner of the Bureau of Reclamation, Defendants.**

No. 2:05–CV–0870PMPLRL.

United States District Court, D. Nevada.

Feb. 9, 2006.

Robert Gaylord Smith, Las Vegas, NV, Sheri M. Schwartz, Lewis Brisbois Bisgaard & Smith, LLP, Las Vegas, NV, William J. Snape, III, Law Office of William J. Snape, III, Washington, DC, Jay F. Stein, Stein & Brockmann, PA, Santa Fe, NM, Gideon Kracov, Gideon Kracov, Law Office of, Los Angeles, CA, for Citizens United for Resources and the Environment, Consejo de Desarrollo Economico de Mexicali, Desert Citizens Against Pollution, Plaintiffs.

James P. Lough, Jennifer M. Lyon, McDougal Love Eckis, et al, El Cajon, CA, Sheri M. Schwartz, Lewis Brisbois Bisgaard & Smith, LLP, Las Vegas, NV, Steven E. Boehmer, McDougal Love Eckis, et al, El Cajon, CA, for Calexico, City of, Intervenor Plaintiff.

David J. DePippo, John J. Rhodes, III, Karma B. Brown, Kathy Robb, Virginia S. Albrecht, Hunton & Williams, Washington, DC, Douglas K. Miller, Central Arizona Water, Conservation District, Phoenix, AZ, Kevin R Stolworthy, Jones Vargas, Las Vegas, NV, for Central Ariz. Water Conservation Dist., Defendant.

Blaine T Welsh, U.S. Attorney's Office, Las Vegas, NV, Kelly A. Johnson, U.S. DOJ, Washington, DC, Michael A. Gheleta, U.S. DOJ, Denver, CO, S. Jay Govindan, U.S. DOJ—Environment & Natural Resources Division, Washington, DC, for John W. Keys, Gale Norton, The United States Of America, Defendants.

Gregg Allen Houtz, Arizona Department of Water Resources, Phoenix, AZ, Michael B Wixom, Smith Larsen & Wixom, Shann D. Winesett, Smith Larsen & Wixom, Las Vegas, NV, William Patrick Schiffer, Arizona Department of Water Resources, Phoenix, AZ, for State of Arizona, Defendant.

Mark J. Hattam, Allen Matkins Leck Gamble & Mallory LLP, San Diego, CA, William H. Swan, Horton, Knox, Carter & Foote, El Centro, CA, for Imperial Irrigation Dist., Defendant.

James H Davenport, Las Vegas, NV, Jennifer T. Crandell, Office of the Attorney General, Las Vegas, NV, for State Of Nevada, Colorado River Commission Of Nevada, Southern Nevada Water Authority, Intervenor Defendants.

Linus Masouredis, Law Office of Linus Masouredis, Sacramento, CA, Nancy L. Allf, Parsons Behle & Latimer, Las Vegas, NV, for Metro. Water Dist. of Southern Cal., Amicus.

*ORDER*

PRO, Chief Judge.

The Mexicali Aquifer underlies both the Imperial Valley in California and the Mexicali Valley in Mexico. Prior to 1901, waters from the Colorado and Alamo rivers recharged the Mexicali aquifer. In 1901, the Alamo Canal was constructed through the channelization of the Alamo River and

because it was unlined, the river continued to recharge the aquifer.

In 1928, Congress authorized the Bureau of Reclamation to build a canal wholly within the United States. The All–American Canal, which was completed in 1942, is located in California's Imperial Valley and provides a route through which Colorado River water is delivered to the Imperial Valley and Mexico. Like the Alamo Canal constructed in 1901, the All–American Canal is unlined. As a result, Plaintiffs allege the All–American Canal provides "as much as 100,000 acre-feet per year into the Mexicali Valley" through seepage recharge.

In 1944, the United States and Mexico entered into a water treaty that allocated the waters of the Colorado River between the two countries. *See* Treaty between the United States of America & Mexico Respecting Utilization of Waters of the Col. & Tijuana Rivers & of the Rio Grande ["1944 Water Treaty"], 59 Stat. 1219, T.S. No. 994., Section III, Art. 10 (Nov. 8, 1945). The 1944 Water Treaty committed to the International Boundary and Water Commission ("IBWC") the power to resolve disputes arising under the Treaty. *Id.*, Arts. 2, 24(d). It also requires the United States to deliver 1.5 million acre-feet of Colorado River water to Mexico. *Id.*, Art. 10.

In 1988, Congress passed the San Luis Rey Indian Water Rights Settlement Act which authorized the Secretary of the Interior "to construct a new lined canal or to line the previously unlined portions of the All American Canal ... or construct seepage recovery facilities ...." Pub.L. No. 100–675, 102 Stat. 4000, § 203. Congress authorized the action because "significant quantities of water currently delivered into the All–American Canal and its Coachella Branch are lost by seepage from the canals and that such losses could be reduced or eliminated by lining these canals." *Id.*

§ 201. The Bureau of Reclamation approved the Record of Decision ("ROD") authorizing the All–American Canal lining project on July 29, 1994. (Mem. in Supp. of United States' Mot. to Dismiss Counts 1–4 and 7–8 ["Mot. to Dismiss"], Ex. 4.) The ROD's accompanying Final Environmental Impact Statement ("FEIS") was noticed in the Federal Register in March 1994. 59 Fed.Reg. 18,573 (Apr. 19, 1994). The ROD announced the agency's decision to reconstruct and line the All–American Canal and noted its environmental effects, special species effects, and the effects on Mexico. (Mot. to Dismiss, Ex. 4.) Subsequent to the issuance of the ROD, the Bureau of Reclamation and the United States section of the IBWC have engaged in diplomatic interchange with Mexico and the Mexican section of the IBWC. (*Id.*, Exs. 6–10.) This case arises out of plans to reconstruct and line the All–American Canal.

Plaintiffs are three organizations who challenge the final authorization of the All–American Canal Lining Project. Plaintiff Consejo de Desarrollo Económico de Mexicali ("CDEM") is "a non-profit organization of business and civic leaders that promotes sustainable economic growth to improve the quality of life for the 1.3 million citizens in the Mexicali Valley, Baja California, [Mexico]." Specifically, CDEM develops and implements environmental and economic strategies for the Mexicali Valley, it creates educational programs for Mexicali workers and entrepreneurs, it researches issues impacting Mexicali's future and informs the public about those issues, and it promotes partnerships with the public and private sector to find solutions for Mexicali problems. In addition, CDEM's membership "includes Mexicali's business leaders and ground water users." Plaintiff Citizens United for Resources and the Environment ("CURE") "is a California non-profit organization

promoting multi-disciplinary research and implementation of balanced land use and resource management decisions." Plaintiff Desert Citizens Against Pollution ("DCAP") "is a California non-profit organization dedicated to environmental health and justice."

Defendants are the United States of America ("United States"), Gale Norton, Secretary of the Department of the Interior (the "Secretary"), and John W. Keys III, the Commissioner of the Bureau of Reclamation (the "Commissioner").

By this action filed on July 19, 2005, Plaintiffs seek injunctive and declaratory relief and assert eight claims: unconstitutional deprivation of water rights (Count 1); constitutional tort (Count 2); equitable apportionment/use (Count 3); estoppel (Count 4); violation of the National Environmental Protection Act ("NEPA") and the Administrative Procedures Act ("APA") (Count 5); Endangered Species Act ("ESA") violations (Count 6); unlawful take of a listed migratory bird species (Count 7); and violation of the San Luis Indian Water Rights Settlement's Act (replacement measures) (Count 8). CDEM brings Counts 1 through 4 on behalf of itself, all beneficial users of the Mexicali Aquifer, and all beneficial users of the seepage from the All–American Canal. Additionally, CDEM claims it and its members use the water which seeps into the Mexicali Aquifer from the All–American Canal. All Plaintiffs jointly assert Count 5. CDEM and CURE jointly assert Counts 6 through 8.

Defendants United States of America, the Secretary, and the Commissioner (collectively "Defendants"), move to dismiss Counts 1 through 4, 7, and 8 (Doc. # 36). First, Defendants argue the Court lacks jurisdiction over Counts 1 through 4, 7, and 8 because these claims involve non-justiciable political questions; sovereign immunity bars Plaintiffs from bringing Counts 1 through 4; Plaintiffs' Counts 1 through 4, 7 and 8 are untimely; and Plaintiffs have failed to allege a federal question and diversity jurisdiction does not exist. In a footnote, Defendants also argue that CDEM lacks standing to bring Counts 1 through 4. Finally, Defendants argue Plaintiffs have failed to state a claim upon which relief can be granted with respect to Counts 1 through 4, 7, and 8.

Also before the Court is Defendant–Intervenor Central Arizona Water Conservation District's ("CAWCD") Motion to Dismiss Counts 1–4 and 6–8 for Lack of Standing (Doc. # 38). CAWCD is "an independent tax-levying public improvement district authorized by the Arizona legislature and created by the citizens of Arizona's three most populous counties to repay the project construction costs and to operate and maintain the Central Arizona Project ('CAP')." (Mem. of P. & A. in Supp. of the Mot. of Central Ariz. Water Conservation District to Intervene as a Def. [Doc. # 18] at 2.) CAWCD alleges the relief Plaintiffs seek could affect CAWCD's legal rights to lower Colorado River water. CAWCD moves to dismiss Counts 1 through 4 and 6 through 8, arguing Plaintiffs lack standing to bring those claims. Thus, the relief sought by CAWCD overlaps with the relief requested by Defendants United States of America, the Secretary, and the Commissioner with respect to Plaintiffs' claims set forth in Counts 1–4, 7 and 8, but CAWCD also seeks dismissal of Count 6.

## I. JURISDICTION

Federal district courts are courts of limited jurisdiction, deriving their power to hear cases from specific congressional grants of jurisdiction. *United States v. Sumner*, 226 F.3d 1005, 1009 (9th Cir. 2000). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move the

court to dismiss the action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving the court has jurisdiction. *Tosco Corp. v. Communities for a Better.Env't,* 236 F.3d 495, 499 (9th Cir.2001).

### A. Counts 1 through 4

■ In Count 1 of the Complaint, CDEM alleges Defendants' plan to line the All–America Canal constitutes a deprivation of property without due process of law, violating the class's substantive and procedural due process rights. CDEM further asserts that its rights to the water are established through:

(a) Prior appropriation of the canal seepage;

(b) Estoppel by reason of the knowledge of all parties of the seepage, the reliance of Mexicali Valley residents on such water for over a century, the construction of extensive waterworks, pumping facilities and infrastructure to transport and utilize such water, and the hardship on the class;

(c) Mexican federal law recognizing the entitlement to well water, as well as international comity;

(d) International and equitable concepts of apportionment and comity[.]

(Doc. # 1.)

In Count 2 of the Complaint, CDEM alleges the Secretary and Commissioner committed a constitutional tort by acting in concert with others to usurp the Mexicali residents' water rights. (*Id.* ¶ 56.) In Count 3, CDEM asserts "the application of water rights in the present context is subject to the doctrines of equitable apportionment or equitable use." (*Id.* ¶ 59.) CDEM further claims "the Secretary and Commissioner have an affirmative duty to configure and implement the All–American Canal Project in a manner that results in the reasonable utilization of the water resources of the Mexicali Valley." (*Id.* ¶ 60.)

Finally, in Count 4, CDEM alleges Defendants are estopped from deviating from the current operation of the All–American Canal because "[r]edigging and reconstructing 29 miles of the All–American Canal as proposed by the Secretary and Commissioner would terminate the recharge necessary to sustain the aquifer to the injury of economic and environmental interests in the Mexicali Valley." (*Id.* ¶ 65.) In a footnote, Defendants argue that CDEM lacks standing to assert these claims and therefore the Court should dismiss for lack of jurisdiction. CAWCD also moves to dismiss Counts 1 through 4 of the Complaint for lack of standing. Plaintiff CDEM does not respond Defendants' arguments regarding lack of standing.

■ Standing is rooted in the case or controversy requirement of Article III of the United States Constitution. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). If a plaintiff lacks standing then a federal district court does "not have subject matter jurisdiction and dismissal [is] appropriate." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1140 (9th Cir.2003) (citing Fed. R.Civ.P. 12(b)(1); *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 664 (9th Cir.2002)). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

■ To demonstrate standing a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action

of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). "Redressability ... requires the court to examine whether 'the court has the power to right or to prevent the claimed injury.'" *Ry. Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir.1985) (quoting *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir.1982)). Thus, "if the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing." *Gonzales*, 688 F.2d at 1267.

CDEM lacks standing to assert Counts 1 through 4 because it has failed to assert an injury in fact that is redressable by a favorable decision by this Court. First, CDEM does not have standing to bring its due process claims because Fifth Amendment protections do not extend to aliens outside of United States territory. Second, the 1944 Water Treaty allocates all water derived from the Colorado River and the Court cannot enforce individual rights under the Treaty because individuals do not have standing to bring suit under the Treaty.

### 1. Extra-territorial Application of the Fifth Amendment

Standing does not depend "on the merits of the plaintiff's contention that particular conduct is illegal." *Warth*, 422 U.S. at 500, 95 S.Ct. 2197 (citation omitted). Rather it rests on both the source and nature of plaintiff's claim. *Id.* "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 269, 110 S.Ct. 1056, 108 L.Ed.2d 222

(1990); *Johnson v. Eisentrager*, 339 U.S. 763, 784, 70 S.Ct. 936, 94 L.Ed. 1255 (1950)). The United States Supreme Court has "rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States." *Verdugo–Urquidez*, 494 U.S. at 268, 110 S.Ct. 1056. Additionally, "[n]either the Constitution nor the laws passed in pursuance of it have any force in foreign territory unless in respect of our own citizens ... and operations of the nation in such territory must be governed by treaties, international understandings and compacts, and the principles of international law." *United States v. Curtiss–Wright Export Corp.*, 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936) (internal citation omitted).

CDEM and its members are aliens located in the Mexicali Valley, Baja California, Mexico, outside the United States sovereign territory. (Compl.¶ 1). In Count 1 of the Complaint, CDEM alleges that Defendants' plan to line the All–America Canal constitutes a deprivation of property without due process of law, violating the class's substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. In Count 2, CDEM also claims that the Secretary and Commissioner acted in concert with others to deprive CDEM and the class of their water rights without due process of law under the Fifth Amendment. In Count 3, CDEM seeks equitable apportionment and use of the seepage water. Count 4 argues Defendants are estopped from diverting the seepage water for their own use because CDEM and its members possess prior property rights in the water. Plaintiffs also state "[t]his case is a classic example of a Legislature ordering the property of A to be transferred to B in violation of the Constitution." (Mem. in Opp'n to Defs.' Mot. to Dismiss Counts 1–4 and 7–8 ["Opp'n"] at 4.)

Because the source of Counts 1 through 4 is the Fifth Amendment of the United States Constitution and CDEM and its members reside outside the territory of the United States, the Court does not have jurisdiction over those claims. The Fifth Amendment does not grant persons in CDEM and its members' position a right to judicial relief as they are aliens outside the United States sovereign territory. Therefore, CDEM lacks standing to assert Counts 1 through 4.

### 2. The 1944 Water Treaty

■ Nor does CDEM have standing to assert its claims under the 1944 Water Treaty. In the Complaint, CDEM argues that if Defendants effect their plan for a newly lined All–American Canal, the canal will deprive CDEM and its members of their water rights. CDEM bases Counts 1 through 4 on it and its members' purported rights to seepage water from the All–American Canal. CDEM argues they possess rights to the seepage water through "[p]rior appropriation of the canal seepage; . . . [e]stoppel by reason of the knowledge of all parties of the seepage . . .; Mexican federal law . . .; [and] International and equitable concepts of apportionment and comity[.]" (Compl.¶ 52.) Defendants, however, argue the 1944 Treaty governs the allocation of seepage water from the All–American Canal and therefore CDEM can have no rights to the water independent of the Treaty. CDEM claims the 1944 Treaty governs only surface water deliveries, not groundwater use, and states that "[a]llocation of water under the Treaty is not at issue in this litigation." (*Id.* ¶ 29.)

The 1944 Water Treaty between Mexico and the United States allocates all the water of the Colorado River between the two nations, regardless of source:

> Of the waters of the Colorado River, *from any and all sources,* there are allotted to Mexico:

> (a) A guaranteed annual quantity of 1,500,000 acre-feet (1,850,234,000 cubic meters) to be delivered in accordance with the provisions of Article 15 of this Treaty.

> (b) Any other quantities arriving at the Mexican points of diversion, with the understanding that in any year in which, as determined by the United States Section, there exists a surplus of waters of the Colorado River in excess of the amount necessary to supply uses in the United States and the guaranteed quantity of 1,500,000 acre-feet (1,850,234,000 cubic meters) annually to Mexico, the United States undertakes to deliver to Mexico, in the manner set out in Article 15 of this Treaty, additional waters of the Colorado River system to provide a total quantity not to exceed 1,700,000 acre-feet (2,096,931,000 cubic meters) a year. Mexico shall acquire *no right beyond that provided by this subparagraph by the use of the waters of the Colorado River system,* for any purpose whatsoever, in .excess of 1,500,000 acre-feet (1,850,234,000 cubic meters) annually.

1944 Water Treaty, Section III, Art. 10 (emphases added). The Treaty's allotment to Mexico of water from the Colorado River includes sub-surface waters derived from the Colorado River. Because the Colorado River feeds the All–American Canal, (Compl.¶¶ 18–25), the Canal is part of the Colorado River System. Thus, the Treaty governs the Defendants' obligation vís-a-vís seepage water from the All–American Canal.

■ Only parties to a treaty may seek enforcement of the treaty and may do so only through diplomatic means:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments

which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress. *The Head Money Cases,* 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798 (1884); *see also Botiller v. Dominguez,* 130 U.S. 238, 247, 9 S.Ct. 525, 32 L.Ed. 926 (1889) ("This court, in a class of cases like the present, has no power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation which the government of the United States, as a sovereign power, chooses to disregard."). Additionally, " 'even where a treaty provides certain benefits for nationals of a particular state . . . individual rights are only derivative through the states.' " *United States v. Valot,* 625 F.2d 308, 310 (9th Cir.1980) (quoting *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 67 (2d Cir.1975) (internal quotation omitted)).

CDEM's Counts 1 through 4 are based on its alleged rights to seepage water derived from the Colorado River. Allocation of seepage water from the Colorado River is governed by the 1944 Water Treaty. Because the 1944 Water Treaty provides no individual rights and does not contain provisions which would allow individuals to sue under the Treaty, CDEM cannot assert rights under the Treaty. Accordingly, CDEM has failed to assert an injury in fact that this Court may redress. CDEM therefore lacks standing and the Court will dismiss Counts 1 through 4 for lack of standing.

**B. Counts 6 through 8**

 In Count 6, CDEM and CURE claim the United States violated the Endangered Species Act ("ESA") by failing to evaluate properly the effects of the canal lining project on listed species, failing to reinitiate formal consultation because of new information that lining the canal will affect listed species and habitats, and failing to authorize a "take" of endangered fish and wildlife species within the United States. In Count 7, Plaintiffs CDEM and CURE allege Defendants' plan to reconstruct and line the All–American Canal will effect a taking of migratory birds in violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703–711, because the Defendants failed to promulgate regulations excepting the agency from the Act's requirements. In Count 8, CDEM and CURE claim Defendants violated the San Luis Rey Act's replacement measures. P.L. 100–675, 102 Stat. 400.

CAWCD moves to dismiss, arguing CDEM and CURE lack standing to bring counts six through eight. CAWCD argues CDEM and CURE have failed to allege an injury in fact because "neither claims that its members recreate and view nature and wildlife in and around the Canal . . . ." (Mot. to Dismiss at 8.) CAWCD also argues CDEM and CURE lack associational standing because CDEM and CURE have failed to demonstrate any of their members have standing and CDEM has not shown that the interests it seeks to protect are germane to its purpose. Plaintiffs respond that CDEM and CURE have organizational standing and their statements that they educate the citizens of the Mexicali and Imperial Valleys and make long-range economic and environmental plans establish an injury in fact to their organizations. They also counter that CURE and CDEM have associational standing because their members have standing to sue in their own right. Additionally, Plaintiffs respond that the economic and environmental interests CDEM seeks to protect are germane to CDEM's organizational purposes of promoting economic well-being and quality of life for Mexicali residents.

### 1. Organizational Standing

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19, 102 S.Ct. 1114, 71 L.Ed.2d 214 (citing *Warth*, 95 S.Ct. at 2211). If an organization's injury is a frustration of its organizational purposes, the organization also must assert an injury beyond "a setback to the organization's abstract social interests." *See id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)); *see also Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir.2004) (stating *Havens* stood for the proposition that "an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question.") (citations omitted).

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 262–63, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the United States Supreme Court held that a non-profit housing corporation had standing to challenge zoning ordinances because the organization alleged it had specific plans to build low-cost homes which the ordinance would prohibit. Similarly, in *Havens*, the Supreme Court found that an organization met the standing requirements because the organization alleged "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources ...." 455 U.S. at 379, 102 S.Ct. 1114.

Plaintiffs argue two specific allegations in the Complaint demonstrate CDEM and CURE have or will suffer an organizational injury:

> CDEM focuses on four areas: (1) developing and implementing long-term regional economic and environmental strategies for Mexicali; (2) designing educational programs for entrepreneurs and workers ....
>
> . . . . .
>
> CURE was founded in 1997, and is a California non-profit organization promoting multi-disciplinary research and implementation of balanced land use and resource management decisions. In that context, CURE promotes public processes that ensure full participation of all impacted parties. In the case of the Imperial and Mexicali Valleys, CURE has a long-standing and demonstrated commitment to solving socio-economic and environmental impacts caused by water transfers and the resultant fallowing of agricultural land, particularly as these water transfers impact the poor.

(Compl.¶¶ 1–2.) Plaintiffs argue this demonstrates an injury in fact because "both CDEM and CURE educate the citizens of Mexicali regarding environmental issues and develop long-term environmental plans for the Mexicali valley. Any harm to the environment surrounding the All–American Canal will impact the ability of CDEM and CURE to perform both of these functions." (Pls.' Opp'n to CAWCD's Mem. in Supp. of Mot. to Dismiss Counts 1–4 and 6–8 for Lack of Standing ["Opp'n"] at 6–7.) CAWCD replies that CDEM and CURE have failed to state a concrete injury beyond an abstract organizational purpose. Additionally, CAWCD argues that CDEM and CURE have failed to allege how the United States' alleged violation of the ESA, Migratory Bird Treaty Act, and San Luis Rey Act will hinder CDEM and CURE's stated purposes of educating the public regarding the environment and developing long-term environmental plans.

Neither CURE nor CDEM have alleged an injury that would entitle either to sue

on its own behalf. In the Complaint, CDEM and CURE allege only generalized interests. (Compl.¶¶ 1–2.) Unlike the organizations in *Havens* and *Metropolitan Housing Development Corp.*, CDEM and CURE do not allege concrete and demonstrable injuries. CDEM alleges only that it has an interest in long-term environmental plans for Mexicali Valley and in educational outreach related to workers and entrepreneurs. CURE alleges interests in the "socio-economic and environmental impacts caused by water transfers . . . ." (*Id.* at ¶ 2.) Neither CDEM nor CURE allege that they have had to divert resources to combat the United States' alleged violation of the ESA, the Migratory Bird Treaty Act, or the San Luis Rey Act.

Furthermore, Plaintiffs do not allege how the United States' alleged violation of the ESA, Migratory Bird Treaty Act, and the San Luis Rey Act and any subsequent harm to the environment will affect CDEM and CURE's ability to carry out their stated organizational goals. It is not clear how possible harm to the environment or a taking of species will prevent CDEM or CURE from educating Mexicali residents about the environment or from making long-term environmental plans. Accordingly, CDEM and CURE have failed to allege an injury in fact that is redressable by this Court and therefore they lack organizational standing to bring Counts 6 through 8.

### 2. Associational Standing

■■■■■ A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. However, an association may assert claims on behalf of its members if it demonstrates "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's

purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc.*, 528 U.S. at 180–181, 120 S.Ct. 693 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

■■■■■ Plaintiffs allege CDEM's members have standing to sue in their own right because they are Mexicali ground water users. Plaintiffs allege CURE's members have standing to sue in their own right because they "implement balanced land use and resource management decisions . . . . [and][t]he loss of groundwater from the Mexicali Valley will necessarily affect the members' ability to balance land use and resource management." (Opp'n at 9.) CAWCD responds that the allegations regarding CURE's membership's injuries are not related to Counts 6 through 8. Additionally, CAWCD argues CDEM's members' alleged injury of deprivation of water rights bears no relationship to Counts 6 through 8.

CAWCD further argues that the United States' alleged violation of the Acts and their effects occur entirely within the United States and CDEM makes no allegations that it has members within the United States, that its members travel to the United States, or that its members have been otherwise harmed due to the United States' alleged violation of the ESA, Migratory Bird Treaty Act, and San Luis Rey Act.

CDEM and CURE have failed to demonstrate that their members would have standing to sue on their own. In the Complaint, CDEM alleges no interest its members possess beyond their interest in Mexicali ground water. CDEM has not

alleged an injury its members suffer or will suffer as a result of the United States' alleged violation of the ESA, Migratory Bird Act, and San Luis Rey Act. Likewise, CURE has failed to allege an injury its members suffer or will suffer as a result of the United States' alleged violation of the ESA, Migratory Bird Treaty Act, and San Luis Rey Act.[1] Because CDEM and CURE have not alleged that at least one of their members have suffered an injury in fact fairly traceable to the United States' alleged violation of the ESA, Migratory Bird Treaty Act, and San Luis Rey Act they have not demonstrated that one of their members has standing to sue on his or her own right. Therefore, CDEM and CURE have not met the first requirement for associational standing. Accordingly, the Court will also dismiss Counts 6 through 8 for lack of standing.

IT IS THEREFORE ORDERED that United States' Motion to Dismiss Counts 1–4 and 7–8 (Doc. # 36) and Defendant–Intervenor CAWCD's Motion to Dismiss Counts 1–4 and 6–8 (Doc. # 38) are hereby GRANTED, and Counts 1–4 and 6–8 of Plaintiffs' Complaint are hereby dismissed.

---

**1.** CURE's allegation of injury regarding the loss of groundwater from the Mexicali Valley only appears in the Opposition and does not appear in the Complaint. Regardless, such an injury is unrelated to the ESA, Migratory Bird Treaty Act, and San Luis Rey Act and fails to demonstrate an injury in fact as a result of United States' alleged violation of the ESA, Migratory Bird Treaty Act, and San Luis Rey Act.